Cynthia Futter (SBN 114096)
Anne E. Wells (SBN 155975)
Futter-Wells, P.C.
2463 Ashland Avenue
Santa Monica, CA 90405
Phone: 310-450-6857
Fax: 888-900-9077
Proposed Counsel for Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO DIVISION

|  |  |
|---|---|
| In re:<br><br>Carbon Beach Partners, LLC, a Delaware Limited Liability Company,<br><br>Debtor in Possession. | Case No.: 09-24657-GM<br><br>**DECLARATION OF CYNTHIA FUTTER REGARDING FORM LOAN DOCUMENTS FOR PLAN OF CONFIRMATION AND DIP FINANCING AND ACTIVE MORTGAGE CORPORATION**<br><br>**Date: October 1, 2010**<br>**Time: 10:00 AM**<br>**Place: Courtroom 303** |

I Cynthia Futter, do hereby declare:

1. I am an attorney at law and am lead counsel for the Debtor and Debtor in Possession herein (the "Debtor").

2. In conjunction with confirmation of the Debtor's Plan of Reorganization, the Debtor has negotiated a new loan to allow the completion of construction of the Debtor's primary asset. This loan is to be made by an affiliate of the manager of the Debtor. Attached hereto as Exhibits A to C are draft form loan documents for the proposed financing of the Debtor in conjunction with the Debtor's Plan of Reorganization. There may be additional documents required for this loan, but I am not aware of any at this time.

3.  Attached hereto as Exhibit D is the budget for this loan, which was attached to the Debtor's approved disclosure statement.

4.  In the past, Futter-Wells, PC, has represented this lender in matters completely unrelated to the Debtor or this bankruptcy case.  Futter-Wells, PC did not prepare these loan documents and they are prepared manually and negotiated by Active internally and with the use of in house counsel.

Executed on this 10th day of September 2010 at Santa Monica, California.


                                        /s/ Cynthia Futter

                                        CYNTHIA FUTTER, Declarant

## Exhibit A
## Form Note

## PROMISSORY NOTE SECURED BY DEED OF TRUST

**U.S. $3,500,000**
Date: November __, 2010
Loan No. _____

    1. **Promise To Pay.**

       FOR VALUE RECEIVED, and at the times hereinafter specified, Carbon Beach Partners, LLC ("**Borrower**"), hereby promises to pay to the order of ACTIVE MORTGAGE CORP., a California corporation (hereinafter referred to, together with each subsequent holder hereof, as "**Lender**"), at 5150 Overland Avenue, Culver City, California 90230, or at such other address as may be designated from time to time by any lender, the principal sum of not to exceed Three Million Five Hundred Thousand Dollars and No Cents ($3,500,000), together with interest on the principal balance outstanding from time to time, as hereinafter provided.

    2. **Security; Loan Documents**.

       This Promissory Note Secured By Deed of Trust (this "**Note**") is secured by a Deed of Trust, Security Agreement, Fixture Filing, and Assignment of Leases and Rents of even date herewith granted by Borrower for the benefit of the named Lender hereof (the "**Deed of Trust**"), encumbering certain property located at 22065 Pacific Coast Highway, Malibu, California 90265, (the "**Property**"), as more particularly described in such Deed of Trust.  Initially capitalized terms used in this Note without being expressly defined herein shall have the meanings given to such terms in the Deed of Trust.  This Note, the Deed of Trust, and all other documents or agreements now or hereafter executed in connection with the loan evidenced by this Note are collectively referred to herein as the "**Loan Documents**".

    **3. Interest; Payments.**

       (a)    Interest Rate.  The balance of principal outstanding from time to time under this Note shall bear interest at the rate of twelve percent (12%) per annum (the "**Interest Rate**").  For purposes of timely monthly payments, interest shall be calculated on the basis of a 360-day year composed of 12 months of 30 days each; for all other purposes (*e.g.*, interest on any payment for less than a full month), interest shall be calculated on the basis of a 360-day year for the actual number of days elapsed.

       (b)    Monthly Payments.  There are no monthly payments on this Note and the full

amount due hereunder is due on the Maturity Date, as defined below.

(c)     <u>Final Payment</u>.  The entire outstanding principal balance of this Note, together with all accrued and unpaid interest and all other sums due under this Note, shall be due and payable in full on May __, 2012 (the "**Maturity Date**").  The Maturity Date may be extended at the option of the Borrower for an additional 180 days, or until November __, 2011 subject to (i) the payment by the Borrower to Lender of a fee equal to 2.5% of the then outstanding principal balance on this Note; and (ii) delivery to Lender of notice of the Borrower's decision to extend the Maturity Date of the Note, with said notice to be delivered to the Lender no later than 30 days prior to the original Maturity Date.

(d)     <u>Time for Payment</u>.  Whenever any payment to be made under this Note is due on a Saturday, Sunday, or public holiday or the equivalent for banks generally under the laws of the State of California (any other day being a "**Business Day**"), such payment may be made on the next succeeding Business Day.

(e)     <u>Manner of Payment</u>.  Principal and interest are payable in lawful money of the United States of America.  All payments under this Note shall be made to Lender in immediately available funds not later than 11:00 a.m. (California time) on the dates such payments are to be made.  Any payment received after such time shall be deemed received by Lender on the next Business Day.

(f)     <u>No Deductions</u>. All amounts due under this Note shall be payable without set off, counterclaim, or deduction of any kind.

(g)     <u>Prepayments</u>.  Borrower shall have the right to prepay all or any part of the outstanding principal balance of this Note, at any time.

(h)     <u>Late Charge; Default Rate</u>.  If any payment due under this Note (including the payment due on the Maturity Date or upon any acceleration of this Note) or any other sum due under this Note is not paid within 10 calendar days after the due date thereof, Borrower shall pay to Lender, in addition to the delinquent payment and without any requirement of notice or demand by Lender, a late payment charge equal to three percent (3%) of the amount of the delinquent payment in order to defray part of the expenses incident to handling such delinquent payment.  In addition, upon the occurrence of any "**Event of Default**" (as hereafter defined), and so long as such Event of Default shall continue, the entire balance of principal, together with all accrued but unpaid interest thereon, shall bear interest at five percent (5.00%) in excess of the interest rate then in effect (the "**Default Rate**").  The imposition of the late payment charge and the application of the Default Rate shall not be interpreted or deemed to extend any cure period set forth in any Loan Document or otherwise limit any of Lender's remedies hereunder or thereunder.

BORROWER ACKNOWLEDGES AND AGREES THAT (I) THE ACTUAL EXPENSES INCURRED BY LENDER IN PROCESSING AND HANDLING DELINQUENT PAYMENTS OR EVENTS OF DEFAULT AND THE ACTUAL DAMAGES TO LENDER FOR THE LOSS OF

THE USE OF DELINQUENT PAYMENTS OR FOR EVENTS OF DEFAULT WOULD BE PRACTICABLE OR EXTREMELY DIFFICULT TO ASCERTAIN, AND (II) UNDER THE CIRCUMSTANCES IN EXISTENCE AS OF THE DATE OF THIS NOTE, THE FOREGOING LATE PAYMENT CHARGE AND INTEREST AT THE DEFAULT RATE CONSTITUTE A REASONABLE ESTIMATE OF SUCH EXPENSES AND DAMAGES.

BORROWER'S INITIALS  _____

(I)    Application of Payments.  All payments hereunder (exclusive of any prepayment or other fees) shall be applied first to the payment of interest at the Default Rate (if any), then to late payment charges (if any), then to the repayment of any sums advanced by Lender for the payment of any insurance premiums, taxes, assessments, or other charges against the Property (together with interest thereon from the date of advance until repaid), then to the payment of accrued and unpaid interest, and then to the reduction of principal.

(J)    Balloon Payment.  AS THERE ARE NO REQUIRED MONTHLY PAYMENTS CALLED FOR UNDER THIS NOTE, BORROWER WILL BE REQUIRED TO PAY A SUBSTANTIAL BALLOON PAYMENT ON THE MATURITY DATE.  BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS NOTE AT ANY TIME AND THAT BORROWER WILL ARRANGE TO REPAY THIS NOTE WITH FUNDS OBTAINED FROM SOURCES OTHER THAN A NEW LOAN FROM LENDER.

### 4.  Event of Default.

The occurrence of any of the following shall be deemed to be an event of Default hereunder ("Event of Default"):

(a)    the failure to pay any amounts coming due under this Note within 10 calendar days after the due date thereof;

(b)    the failure to perform any other obligation of Borrower under this Note within 30 calendar days after Lender's delivery to Borrower of written notice of such failure; provided, however, that if such failure cannot reasonably be cured within such 30-day period, borrower shall not be in default so long as Borrower commences such cure within the prescribed period and thereafter diligently prosecutes the same to completion; or the occurrence of an Event of Default under any of the other Loan Documents (including any amendment, modification, or extension thereof).

### 5.  Remedies.

Upon the occurrence of any Event of Default, the entire balance of principal, accrued interest, and other sums owing hereunder shall become, at the option of Lender, immediately due and payable without notice to or demand on Borrower.  No failure or delay by Lender in exercising any right,

power, or privilege hereunder or under any other Loan Document, and no course of dealing between Borrower and Lender, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder or under any other Loan Document preclude any other or further exercise thereof or the exercise of any other right, power, or privilege hereunder or thereunder.  The rights, powers, and remedies herein or in any other Loan Document are cumulative and not exclusive of any rights, powers, or remedies that Lender would otherwise have.  No notice to or demand on Borrower in any case shall, by itself, entitle Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of Lender to any other or further action in any circumstances without notice or demand where notice or demand is not otherwise required.  Without limiting the generality of any of the foregoing, Lender's acceptance of any partial payments shall not operate as an accord and satisfaction or as a waiver of any right under this Note or any of the other Loan Documents to require full payments under this Note as and when scheduled, both as to the partial payment accepted by Lender and as to future payments under this Note.

6.  **Miscellaneous**.

(a)  <u>Choice of Law</u>.  Regardless of the place of its execution, this Note shall be governed by and construed and enforced in accordance with the laws of the State of California.

(b)  <u>Jurisdiction</u>.  BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY COURT OF COMPETENT JURISDICTION LOCATED IN THE STATE OF CALIFORNIA, IN THE COUNTY OF LOS ANGELES, IN CONNECTION WITH ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM, OR OTHER ACTION ARISING IN CONNECTION THEREWITH. BORROWER HEREBY AUTHORIZES LENDER TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING, AS CONCLUSIVE EVIDENCE OF THIS AGREEMENT BY BORROWER.

BORROWER'S INITIALS _____

(C)  <u>Waiver of Trial by Jury</u>.  BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY, AND WAIVES ANY RIGHT TO SUCH TRIAL BY JURY, IN CONNECTION WITH ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM, OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER IS GIVEN KNOWINGLY AND VOLUNTARILY, AND IS INTENDED TO ENCOMPASS EACH INSTANCE AND EACH ISSUE AS TO WHICH HE RIGHT TO A TRIAL BY JURY OTHERWISE WOULD ACCRUE.  BORROWER HEREBY AUTHORIZES LENDER TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING, AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

BORROWERS INITIALS _____

(d)    Attorneys' Fees.  If either Lender engages legal services with respect to this Note or any of the obligations or provisions herein, including the collection, proper interpretation or the enforcement of this Note, Lender shall be entitled to recover  from the Borrower all reasonable fees and costs incurred by Lender in connection with such legal services. The foregoing includes, without limitation, (I) fees, costs, and expenses of any engineers, accountants, appraiser, consultants and other professionals or experts retained or consulted by the Lender, and other costs and expenses of investigation reasonably incurred by the Lender, and (ii) all such fees, costs, and expenses incurred in any aspect of the legal process, whether out-of-court negotiations, mediation, arbitration proceedings, appeals, commencement of suit, discovery, law and motion, trial, appellate proceedings, or any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11, or 13 of the Bankruptcy Code (11 U.S.C. §101, *et seq.),* or any successor or similar state law statutes.

(e)    Interest Rate Limitation.  The provisions of this Note and of all agreements between Borrower and expressly limited so that in no contingency shall the amount paid, or agreed to be paid, use, forbearance, or detention of the money to be loaned, hereunder exceed the maximum amount permissible law.  If, from any circumstance whatever, fulfillment of any provision hereof or of any other agreement between Borrower and Lender, at the fulfillment of such provision is due, shall involve or purport to require any payment in excess of the limits then prescribed by law, then the obligation to be performed or fulfilled is hereby reduced to the limit of such validity, and if, from  circumstance whatever, Lender should ever receive as interest an  amount that would exceed the highest lawful rate, the amount that would be excessive interest shall be applied to  the reduction of the  principal balance owing hereunder (or, at the Lender's option, be paid over to Borrower) and shall not be Counted as interest.

(f)    Severability.  If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of this Note, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law.

(g)    Waivers. Except to the extent expressly provided otherwise in this Note or in any of the other Loan Documents, Borrower and all parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally (I) waive presentment and demand for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, protest and notice of protest and/or dishonor, all applicable exemption rights, valuation and appraisement, and all other demands or notices of any sort whatever with respect to this Note, (ii) consent to acceptance of further collateral, impairment or release of any collateral, extensions of time for payment, acceptance of partial payments before, at, or after the Maturity Date, and any renewals, waivers, or modifications that may be granted by Lender with respect to this Note, all without notice or consent, and (iii) waive any right to require Lender to proceed against any collateral for this Note before proceeding hereunder.

(h) Headings.  Headings at the beginning of each numbered paragraph of this Note are

intended solely for convenience and are not to be deemed or construed to be a part of this Note.

      (I) <u>Number and Gender</u>.  In this Note the singular shall include the plural and the masculine shall include the feminine and neuter gender, and vice versa, if the context so requires.

      (j)     <u>Joint and Several Liability</u>.  If Borrower is at any time comprised of more than one person or entity, then all persons or entities that comprise Borrower shall be jointly and severally liable for all of the covenants, agreements, and obligations contained in this Note.

      (k)    <u>Authority</u>.  Borrower hereby certifies and declares that all acts, conditions, and things required to be done and performed and to have happened prior to the creation and issuance of this Note, and to cause this Note to be the legal, valid, and binding obligation of Borrower, enforceable in accordance with the terms hereof, have been done and performed and happened in due and strict compliance with all applicable laws.

      (l)    <u>Notices</u>.  All notices or other communications required or permitted to be given pursuant to this Note shall be given in the manner and be effective as specified in the Deed of Trust.

      (m) <u>Entire Agreement; Written Modifications</u>.  This Note, and all the other Loan Documents, including the commitment letter contain the final, entire agreement of Borrower and Lender and supersede all prior commitments, agreements, and understandings, whether written or oral, relating to the subject matter hereof and thereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements, discussions, or negotiations of Borrower and Lender.  The provisions of this Note may be modified, amended, or revised only by an instrument in writing signed by Borrower and Lender.

IN WITNESS WHEREOF, Borrower has executed this Note as of the date set forth below.

Date: November __, 2010

**Carbon Beach Partners, LLC**

By: _____
Name:  Michael Kest
Title:  President of Jordinia Operations, Inc.
Its: Managing Member

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B**
**Form Deed of Trust**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
ACTIVE MORTGAGE CORP.
5150 OVERLAND AVE
CULVER CITY CA. 90230

# DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING,
## AND ASSIGNMENT OF LEASES AND RENTS

### NOTICE: THIS DEED OF TRUST ALSO CONSTITUTES AND IS FILED AS A FIXTURE FILING PURSUANT TO SECTIONS 9313 AND 9402 (6) OF THE CALIFORNIA COMMERCIAL CODE.

This DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING, AND ASSIGNMENT OF LEASES AND RENTS (this **"Deed of Trust"**) is given as of  November __, 2010 by Carbon Beach Partners, LLC, a Delaware limited liability company **("Borrower"),** whose address is 22065 Pacific Coast Highway, Malibu, California. 90265, in  favor of ACTIVE MORTGAGE CORP., a California corporation **("Trustee")** whose  address is 5150 Overland Ave., Culver City, Ca.  91230, for the use and benefit of ACTIVE MORTGAGE CORP., a California corporation **("Lender")**, whose address 5150 Overland Avenue, Culver City, California 90230.

### ARTICLE I
### PARTIES, PROPERTY, AND DEFINITIONS

The following terms and references shall have the meanings indicated:

**1.1.   Beneficiary:**   Lender, together with any future holder of the Note.

**1.2   Chattels:**   All goods, furniture, furnishings, fixtures, inventory, equipment, building and other materials, supplies, and other tangible personal property of every nature now owned or hereafter acquired by Grantor and used, intended for use, or reasonably required in the beneficial development, ownership, use, occupancy, operation, or maintenance of the property, together with all accessions thereto, replacements and substitutions therefor, and proceeds thereof.

**1.3.   Grantor**:     Borrower, together with any successor assign, or future owner of the Property or any part thereof or interest therein.

**1.4.   Intangible Personalty:**   The right to use all trademark and trade names and symbols or logos used in connection therewith, or any modifications or variations

1

thereof, in  connection with the operation of the improvements existing or to be constructed on the Property, together with all accounts monies in the possession of Beneficiary (including, but no limited to, retainages and deposits for taxes and insurance) contract rights and general intangibles (whether now owned or hereafter acquired, and including proceeds thereof) relating to or arising from Grantor's ownership, use, operation, leasing, or sale of all or any part of the Property, specifically including but not limited to, any right that Grantor may have or acquire to transfer any development rights from the Property to other real property, and any development rights that may be so transferred.

**1.5.**   **Leases:**   Each present and future lease, license, or other agreement for the occupancy, possession, or use of all or any part of the Property (including, but not limited to, an rooms or other accommodations for guests or other transient occupants and any storage space, containers, or other facilities).

**1.6.**   **Loan Documents:**   The Note, all of the deeds of trust mortgages, and other instruments and documents securing the Note (including this Deed of Trust), and each other document execute or delivered in connection with the transaction pursuant to which the Note has been executed and delivered.  The term **"Loan Documents"** also includes all modifications, extensions, renewals, and replacements of each document referred to above.

**1.7.**   **Note:**   Grantor 's Promissory Note Secured By Deed of Trust of even date herewith, payable to the order of Beneficiary in the principal face  amount of $3,500,000 __together with all renewals, extensions, and modifications of such Promissory Note. All terms and provisions of the Note are incorporated by this reference in this Deed of Trust.

**1.8.**   **Permits:**   All permits, licenses, certificates, and authorizations necessary for the beneficial developments, ownership, use, occupancy, operation and maintenance of the property.

**1.9.**   **Property:**   The Real Property, Chattels, Intangible Personalty, and Leases, together with all accessions thereto, replacements and substitutions therefor, and proceeds thereof.

**1.10.**   **Real Property:**     The tract or tracts of land described in Exhibit A attached, together with the following:

(a)     All buildings, structures, and improvements now or hereafter located on such tract or tracts, as well as all rights-of-way, easements, and other appurtenances thereto;

(b)     All of Grantor's right, title, and interest in any land lying between the boundaries of such tract or tracts and the center line of any adjacent street, road, avenue, or alley, whether opened or proposed;

(c)     All of the rents, income, receivables, royalties, receipts, revenues, deposits (including, but not limited to, security and utility deposits), accounts, cash, issues, profits, and other consideration of whatever form or nature received by or paid to

2

or for the account of or benefit of Grantor or its agents or employees from any and all sources, including, but not limited to, the Leases, arising from or attributable to such tract or tracts and improvements (generally, "**Rents**");

(d)     All (i) water and water rights (whether decreed or undecreed, tributary or nontributary, not surface or underground, or appropriated or unappropriated); (ii) ditches and ditch rights; (iii) spring and spring rights; (iv) reservoir and reservoir rights; and (v) shares of stock in water, ditch, and canal companies and all other evidence of such rights, that are now owned or hereafter acquired by Grantor and that are appurtenant to or which have been used in connection with such tract or tracts or improvements;

(e)     All minerals, crops, timber, trees, shrubs, flowers, and landscaping features now or here after located on, under, or above such tract or tracts;

(f)     All machinery, apparatus, equipment, fittings, fixtures (whether actually or constructively attached, and including all trade, domestic, and ornamental fixtures) now or hereafter located in, upon, or under such tract or tracts or improvements and used or usable in connection with any present or future operation thereof, including, but not limited, to all heating, air-conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, cooking, and communications apparatus; boilers, water heaters, ranges, furnaces, and burners; appliances; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; and all additions thereto and replacements therefor;

(g)     All development rights associated with such tract or tracts, whether previously or subsequently transferred to such tract or tracts from other real property or now or hereafter susceptible of transfer from such tract or tracts to other real property;

(h)     All awards and payments, including interest thereon, resulting from the exercise of any right of eminent domain or any other public or private taking of, injury to, or decrease in the value of, any of such property;

(I)     To the extent transferable, all rights of Trustor under all present and future agreements, licenses, Permits, and other documents relating to the ownership, operation, or use of such tract or tracts (collectively, the "**Operating Agreements**"),including, but not limited to, any management agreement, service contracts, licenses (including business and liquor licenses, if capable of being assigned as security), repair warranties, and agreements giving or granting to Trustor or the owner of such tract or tracts any rights to use any adjacent or nearby property; and

(j)     All other and greater rights and interests of every nature in such tract or tracts and in the possession or use thereof and Rents therefrom, whether now owned or subsequently acquired by Grantor.

**1.11. Secured Obligations:** All present and future obligations of Grantor to

3

Beneficiary evidenced by or contained in the Loan Documents, with the exception of the Environmental Indemnity of even date herewith between Grantor and Beneficiary, whether stated in the form of promises, covenants, representations, warranties, conditions or prohibitions or in any other form. If this Deed of Trust is foreclosed, either through Trustee or through the courts, the Secured Obligations shall include an amount equal to any prepayment fee or premium that would be payable under the terms of the Note as if the Note were prepaid in full on the date of the foreclosure sale.

## ARTICLE II

## GRANTING CLAUSE

**2.1  Grant To Trustee:**  As security for the Secured Obligations, Grantor hereby grants, bargains, sells, and conveys the Property to Trustee, in trust, with power of "Sale", for the use and benefit of Beneficiary, and subject to all provisions hereof.

**2.2  Security Interest Granted To Beneficiary:**  As additional security for the Secured obligations, Grantor hereby grants to Beneficiary a security interest in the Chattels and in the Intangible Personalty.  To the extent any of the Chattels or the Intangible Personalty may be or have been acquired with funds advanced by Beneficiary under the Loan Documents, this security interest is a purchase money security interest. This Deed of Trust constitutes a Security Agreement under the California Commercial Code (the **"Code"**) with respect to any part of the Property, Chattels, and Intangible Personalty that may or might now or hereafter be or be deemed to be personal property, fixtures, or property other than real estate (all collectively hereinafter called **"Collateral"**); all of the terms, provisions, conditions, and agreements contained in this Deed of Trust pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Property, and the following provisions of this Section shall not limit the generality or applicability of any other provisions of this Deed of Trust but shall be in addition thereto:

(a)  The Collateral shall be used by Grantor solely for business purposes, being installed upon the real estate comprising part of the Property for Grantor's own use or as the equipment and furnishings furnished by Grantor, as landlord and licensor, to tenants, licensees, or other holders of a possessory interest in all or any part of the Property (each, a **"Tenant"** and collectively, the **"Tenants"**);

(b) The Collateral shall be kept at the real estate comprising a part of the Property, and shall not be removed therefrom without the consent of Beneficiary; and the Collateral may be affixed to such real estate but shall not be affixed to any other real estate;

(c)  Grantor, at its cost and expense, upon demand, will furnish to Beneficiary such further information and will execute and deliver to Beneficiary such financing statements and other documents in form satisfactory to Beneficiary and will do all such acts and things as Beneficiary may at any time or from time to time reasonably request or as may be necessary or appropriate to establish and maintain a perfected

4

security interest in the Collateral as security for the Secured Obligations, subject to no adverse liens or encumbrances;

(d) The terms and provisions contained in this and in <u>Section 7.6</u> hereof shall, unless the context otherwise requires, have the meanings and be construed as provided in the Code; and

(e) This Deed of Trust constitutes a financing statement under the Code with respect to the Collateral. As such, this Deed of Trust covers goods which are or are to become fixtures. The filing of this Deed of Trust in the real estate records of the county where the Property is located (the **"Official Records"**) shall also operate as a fixture filing in accordance with Sections 9313 and 9402(6) of the Code. Grantor is the **"Debtor"** and Beneficiary is the **"Secured Party"** (as those terms are defined and used in the Code) insofar as this Deed of Trust constitutes a financing statement. Information concerning the security interest created hereby may be obtained from Beneficiary at the address set forth on the first page of this Deed of Trust.

## ARTICLE III

### GRANTOR'S REPRESENTATIONS AND WARRANTIES

**3.1    Warranty of Title:**   Grantor represents and warrants to Beneficiary that Grantor has not previously sold, assigned, conveyed, or transferred to any other person or entity any right, title, or interest in or to all or any part of the Property. Grantor hereby agrees to warrant and forever defend all of the Property and property interest granted and conveyed in trust pursuant to this Deed of Trust against every person lawfully claiming all or any part thereof as a result of any prior sale, assignment, conveyance, or transfer by Grantor of all or any part of the same. The warranties contained in this Section shall survive foreclosure of this Deed of Trust, and shall inure to the benefit of and be enforceable by any person who may acquire title to the Property pursuant to any such foreclosure.

**3.2    Other    Representations    and    Warranties:**    Grantor represents and warrants to Beneficiary as follows:

(a)    The execution, delivery, and performance by Grantor of the Loan Documents are within Grantor' s power and authority and have been duly authorized by all necessary action.

(b)    This Deed of Trust is, and each other Loan Document to which Grantor is a party will, when delivered hereunder, be valid and binding obligations of Grantor enforceable against Grantor in accordance with their respective terms, except as may be limited by equitable principles and bankruptcy, insolvency, and similar laws affecting creditors, rights.

(c)    The execution, delivery, and performance by Grantor of the Loan Documents will not contravene any contractual restriction binding on or affecting Grantor,

5

and will not result in or require the creation of any lien, security interest, other charge, or encumbrance (other than pursuant hereto) upon or with respect to any of Grantor's assets.

(d)     The execution, delivery and performance by Grantor of the Loan Documents does not contravene any applicable law.

(e)     Other than approval of the Bankruptcy Court overseeing the chapter 11 case of the Grantor, no authorization, approval, consent, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery, and performance by Grantor of any of the Loan Documents or the effectiveness of any assignment of any of Grantor's rights and interests of any kind to Beneficiary.

(f)     Other than litigation between There is no pending or, to the best of Grantor's knowledge, threatened, litigation, action, proceeding, or investigation against Grantor before any court, governmental or quasi-governmental, arbitrator or other authority.

(g)     Grantor has filed all tax returns that are required to be filed by Grantor, and has paid all taxes as shown on such returns.

(h)     Grantor is not in default, in any manner that would adversely affect its assets, operations, or condition (financial or otherwise), in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions set forth in any agreement or instrument to which it is a party or by which it or any of its assets or revenues are bound.

(i)     Grantor has no knowledge of any brokerage agreements with respect to any part of the Property.

(j)     To Grantor's actual knowledge, none of the Permits has been suspended or revoked, and all of the Permits are in full force and effect, are fully paid for, and Grantor has made or will make application for renewals of any of the Permits prior to the expiration thereof.

(k)     All insurance policies held by Grantor relating to or affecting the Property are in full force and effect and shall remain in full force and effect through the date of payment in full of the Note.  Grantor has not received any notice of default or notice terminating or threatening to terminate any such insurance policy and Grantor has made or will make application for renewals of any of such insurance policies prior to the expiration thereof.

**3.3 Continuing Effect:**  Grantor shall be liable to Beneficiary for any damage suffered by Beneficiary if any of the foregoing representations are inaccurate as of the date hereof, regardless when such inaccuracy be discovered by, or result in harm to, Beneficiary.

## ARTICLE IV

## GRANTOR'S AFFIRMATIVE COVENANTS

**4.1  Payment of Note:**  Grantor will pay all principal, interest, and other sums payable under the Note, on the date when such payments are due, without notice or demand.

**4.2  Performance of Other Obligations:**  Grantor will promptly and strictly perform and comply with all other covenants, conditions, and prohibitions required of Grantor by the terms of the Loan Documents or any bankruptcy court order approving a plan of reorganization for the Grantor.

**4.3  Other Encumbrances:**  Other than as provided for in any order confirming a plan of reorganization for the Debtor, Grantor will promptly and strictly perform and comply with all covenants, conditions, and prohibitions required of Grantor in connection with any other encumbrance affecting all or any part of the Property, or any interest therein, regardless of whether such other encumbrance is superior or subordinate to the lien hereof.  Nothing contained in this Section shall be deemed or interpreted to permit Grantor to subject all or any part of the Property to any encumbrance other than the lien hereof, in violation of <u>Section</u> 5.4 hereof.

**4.4    Payment of Taxes:**

(a)  <u>Property Taxes</u>.  Grantor will pay, before delinquency, all taxes and assessments, general or special, that may be levied or imposed at any time against Grantor' s interest and estate in the Property (collectively, the "Taxes").  Upon any request by Beneficiary, Grantor will deliver to Beneficiary an official receipt for such payment.  At Beneficiary's option, Beneficiary may retain the services of a firm to monitor the payment of all Taxes, the cost of which shall be borne by Grantor.

(b)  <u>Deposit for Taxes</u>.  From and after demand by Beneficiary (which may be made only after an **"Event of Default"** (as hereafter defined), Grantor will deposit with Beneficiary cash or other good funds sufficient to pay the amount that Beneficiary estimates will be required to pay all of the Taxes for the current tax fiscal year, (I) <u>less</u> an amount equal to the Taxes attributable to the period from January 1 or July 1 (whichever was the last to occur) until, but not including, the date of Beneficiary's demand, (ii) <u>less</u> 1/12th of the total Taxes for the current tax fiscal year multiplied by the number of whole or partial months from the demand date until March I or November 1 (whichever is the next to occur).  Thereafter, with each monthly payment under the Note, Grantor will deposit with Beneficiary cash or other good funds equal to 1/12th of the amount that Beneficiary estimates will be the total Taxes for the current tax fiscal year.  The purpose of these provisions is to provide Beneficiary with sufficient funds on hand to pay all such Taxes thirty (30) days before the date on which they become past due.  Provided no default or Event of Default exists hereunder, Beneficiary will apply the amounts so deposited to the payment of such Taxes when due.

7

(c) <u>Intangible Taxes</u>.  If by reason of any statutory or constitutional amendment or judicial decision adopted or rendered after the date hereof, any tax, assessment, or similar charge is imposed against the Note, against Beneficiary, or against any interest of Beneficiary in any real or personal property encumbered hereby, Grantor will pay such tax, assessment, or other charge before delinquency and will indemnify Beneficiary against all loss, expense, or diminution of income in connection therewith.  In the event Grantor is unable to do so, either for economic reasons or because the legal provisions or decisions creating such tax, assessment, or charge forbid Grantor from doing so, then, at Beneficiary's option, the Note will become due and payable in full upon thirty (30) days' notice to Grantor.

(d) <u>Right To Contest</u>.  Notwithstanding any other provision of this Section, Grantor will not be deemed to be in default solely by reason of Grantor's failure to pay any tax, assessment, or similar governmental charge so long as, in Beneficiary's judgment, each of the following conditions is satisfied:

(i) Grantor is engaged in and diligently pursuing in good faith administrative or judicial proceedings appropriate to contest the validity or amount of such tax, assessment, or charge;

(ii) Grantor's payment of such tax, assessment, or charge would necessarily and materially prejudice Grantor's prospects for success in such proceedings;

(iii) Nonpayment of such tax, assessment, or charge will not result in the loss or forfeiture of any property encumbered hereby or any interest of Beneficiary therein; and

(iv) Grantor deposits with Beneficiary, as security for any payment that may ultimately be required, a sum equal to the amount of the disputed tax, assessment, or charge plus the interest, penalties, advertising charges, and other costs that Beneficiary estimates are likely to become payable if Grantor's contest is unsuccessful.

If  Beneficiary determines that any one or more of such conditions is not satisfied or is no longer satisfied, Grantor will pay the tax, assessment, or charge in question, together with any interest and penalties thereon, within ten (10) days after Beneficiary gives notice of such determination.

**4.5    Maintenance of Insurance:**

(a) <u>Coverages Required</u>.    Grantor shall maintain or cause to be maintained, with financially sound and reputable insurance companies or associations, insurance that insures the Property against (i) all risk of loss, damage, destruction, theft, or any other casualty or risk, covering the Property including all of Grantor's personal property located therein, without deduction for depreciation, in an amount approved by Beneficiary, but in no event less than the full replacement cost thereof, and builder's risk insurance throughout the period of any construction of any improvements on the Property, (ii) use and occupancy insurance covering either Rents or business interruption with coverage in an amount not less than eighteen months' anticipated gross Rents, (iii) comprehensive general liability insurance covering the Property and Grantor, in an

8

amount approved by Beneficiary, and (iv) worker's compensation insurance in accordance with the requirements of applicable law, which policies of insurance maintained pursuant to this <u>Section 4.5</u> shall provide standard mortgagee endorsements or clauses naming Beneficiary as mortgagee and as loss payee (with respect to property insurance) or additional insured (with respect to liability insurance). All required policies shall provide for thirty (30) days' written notice to Beneficiary prior to the effective date of any cancellation or modification thereof. The original or a certified copy of each insurance policy shall be delivered to Beneficiary, and such delivery will constitute an assignment to Beneficiary, as further security for the Secured Obligations, of all unearned premiums returnable upon cancellation of any such policy. Grantor shall also maintain, at the request of Beneficiary, such hazard insurance, in addition to the insurance required above, as Beneficiary may reasonably request and as shall be available, including, but not limited to, flood, including surface waters, and earthquake, including subsidence, all of such insurance to comply in all respects with the requirements of this <u>Section 4.5</u>.

(b) <u>Renewal Policies</u>. Not less than thirty (30) days prior to the expiration date of each insurance policy required pursuant to <u>subsection 4.5(a)</u> above, Grantor will deliver to Beneficiary an appropriate renewal policy (or a certified copy thereof), together with evidence satisfactory to Beneficiary that the applicable premium has been prepaid.

(c) <u>Deposit for Premiums</u>. From and after demand by Beneficiary (which may be made only after an Event of Default hereunder), Grantor will deposit with Beneficiary cash or other good funds sufficient to pay the next annual payments of the premiums for the policies of insurance referred to in this Section, <u>less</u> 1/12th of such annual payments multiplied by the number of whole and partial months until the next policy anniversary date for each such policy. Thereafter, with each monthly payment under the Note, Grantor will deposit with Beneficiary cash or other good funds equal to 1/12th of the amount that Beneficiary estimates will be required to pay the next required annual premium for each insurance policy referred to in this Section. Any money so received by Beneficiary may be held and commingled with Beneficiary's own funds, and in no event will Beneficiary be liable for any interest on any amount so deposited. The purpose of these provisions is to provide Beneficiary with sufficient funds on hand to pay all such premiums thirty (30) days before the date on which they become past due. Provided no default or Event of Default exists hereunder, Beneficiary will apply the amounts so deposited to the payment of such insurance premiums when due.

(d) <u>Application of Hazard Insurance Proceeds</u>. Any insurance proceeds received by Beneficiary with respect to an insured casualty may, in Beneficiary's sole discretion, either (I) be retained and applied by Beneficiary toward payment of the Secured Obligations, or (ii) be paid over, in whole or in part and subject to such conditions as Beneficiary may impose, to Grantor to pay for repairs or replacements necessitated by the casualty; provided, however, that if all of the Secured obligations have been performed or are discharged by the application of less than all of such insurance proceeds, then any remaining proceeds will be paid over to Grantor. Notwithstanding the preceding sentence, if  no default or Event of Default shall have occurred and be continuing hereunder,  the proceeds received by Beneficiary (together with any other funds delivered by Grantor to Beneficiary for such purpose) shall be sufficient, in Beneficiary's reasonable judgment, to pay for any restoration necessitated by the casualty,  the cost of such restoration shall not

9

exceed ten percent (10%) of the then current amount of the Secured Obligations, and such restoration can be completed, in Beneficiary's reasonable judgment, at least ninety (90) days prior to the maturity date of the Note, then Beneficiary shall apply such proceeds as provided in clause (ii) of the preceding sentence. Beneficiary will have no obligation to see to the proper application of any insurance proceeds paid over to Grantor. Beneficiary shall not be liable for any interest on any proceeds applied as provided in clause (ii) above. Beneficiary may, prior to the application of insurance proceeds, commingle them with Beneficiary's own funds and otherwise act with regard to such proceeds as Beneficiary may determine in Beneficiary's sole discretion.

(e) <u>Successor's Rights</u>. Any person who acquires title to the Property or the Chattels upon foreclosure hereunder will succeed to all of Grantor's rights under all policies of insurance maintained pursuant to this Section.

**4.6 Maintenance and Repair of Property:** Grantor will at all times maintain the Property in good condition and repair, will diligently prosecute the completion of any building or other improvement that is at any time in the process of construction on the Property, and will promptly repair, restore, replace, or rebuild any part of the Property that may be affected by any casualty or any public or private taking or injury to the Property, whether occurring before or after this Deed of Trust is recorded in the Official Records. All costs and expenses arising out of the foregoing shall be paid by Grantor whether or not the proceeds of any insurance or eminent domain shall be sufficient therefor. Grantor will comply with all statutes, ordinances, and other governmental or quasi-governmental requirements and private covenants relating to the ownership, construction, use, or operation of the Property, including, but not limited to, any environmental or ecological requirements; <u>provided, however</u>, that so long as Grantor is not otherwise in default hereunder, Grantor may, upon providing Beneficiary with security reasonably satisfactory to Beneficiary, proceed diligently and in good faith to contest the validity or applicability of any such statute, ordinance, or requirement. Beneficiary and any person authorized by Beneficiary may enter and inspect the Property at all reasonable times, and may inspect the Chattels, wherever located, at all reasonable times.

**4.7 Performance of Obligations:** Grantor will perform promptly all of Grantor's material obligations under or in connection with each Lease and each Operating Agreement. If Grantor receives at any time any written communication from the Tenant under any material Lease or the other party under any material Operating Agreement, asserting a default by Grantor under such Lease or Operating Agreement, or purporting to terminate or cancel such Lease or Operating Agreement, Grantor will promptly forward a copy of such communication (and any subsequent communications relating thereto) to Beneficiary.

**4.8 Eminent Domain; Private Damage:** If all or any part of any property encumbered hereby is taken or damaged by eminent domain or any other public or private action, Grantor will notify Beneficiary promptly of the time and place of all meetings, hearings, trials, and other proceedings relating to such action. Beneficiary may participate in all negotiations and appear and participate in all judicial or arbitration proceedings concerning any award or payment that may be due as a result of such taking or damaging, and may, in Beneficiary's reasonable discretion, compromise or settle, in the

10

name of Beneficiary, any claim for any such award or payment. Any such award or payment is to be paid to Beneficiary and will be applied first to reimburse Beneficiary for all costs and expenses, including attorneys' fees and costs, incurred by Beneficiary in connection with the ascertainment and collection of such award or payment. The balance, if any, of such award or payment may, in Beneficiary's sole discretion, either (a) be retained by Beneficiary and applied toward the Secured obligations, or (b) be paid over, in whole or in part and subject to such conditions as Beneficiary may impose, to Grantor for the purpose of restoring, repairing, or rebuilding any part of the encumbered property affected by the taking or damaging. Notwithstanding the preceding sentence, if (i) no default or Event of Default shall have occurred and be continuing hereunder, (ii) the proceeds received by Beneficiary (together with any other funds delivered by Grantor to Beneficiary for such purpose) shall be sufficient, in Beneficiary's reasonable judgment, to pay for any restoration necessitated by the taking or damaging, (iii) the cost of such restoration shall not exceed ten percent (10%) of the then current amount of the Secured Obligations, (iv) such restoration can be completed, in Beneficiary's reasonable judgment, at least ninety (90) days prior to the maturity date of the Note, and (v) the remaining property shall constitute, in Beneficiary's sole judgment, adequate security for the Secured obligations, then Beneficiary shall apply such proceeds as provided in clause (b) of the preceding sentence. Beneficiary will have no duty to see to the application of any part of any award or payment released to Grantor. Grantor's duty to pay the Note in accordance with its terms and to perform the other Secured obligations will not be suspended by the pendency or discharged by the conclusion of any proceedings for the collection of any such award or payment, and any reduction in the Secured obligations resulting from Beneficiary's application of any such award or payment will take effect only when Beneficiary receives such award or payment. If this Deed of Trust has been foreclosed prior to Beneficiary's receipt of such award or payment, Beneficiary may nonetheless retain such award or payment to the extent required to reimburse Beneficiary for all costs and expenses, including attorneys' fees and costs, incurred in connection therewith, and to discharge any deficiency remaining with respect to the Secured Obligations.

**4.9 Mechanics' Liens:** From the date of this Deed of Trust forward, Grantor will keep the Property free and clear of all liens and claims of liens by contractors, subcontractors, mechanics, laborers, material men, and other such persons, and will cause any recorded statement of any such lien to be released of record within thirty (30) days after the recording thereof. Notwithstanding the preceding sentence, however, Grantor will not be deemed to be in default under this Section if and so long as Grantor (a) contests in good faith the validity or amount of any asserted lien and diligently prosecutes or defends an action appropriate to obtain a binding determination of the disputed matter, and (b) provides Beneficiary with such security as Beneficiary may require to protect Beneficiary against all loss, damage, and expense, including attorneys' fees and costs, that Beneficiary might incur if the asserted lien is determined to be valid.

**4.10 Defense of Actions:** Grantor will defend, at Grantor's expense, any action, proceeding, or claim that affects any property encumbered hereby or any interest of Beneficiary in such property or in the Secured Obligations, and will indemnify and hold Beneficiary harmless from all loss, damage, cost, or expense, including attorneys' fees and costs, that Beneficiary may incur in connection therewith.

11

**4.11 Expenses of Enforcement:** Grantor will pay all costs and expenses, including attorneys fees, that beneficiary may incur in connection with any effort or action to enforce or defend Beneficiary's rights and remedies under any of the Loan Documents, including, but not limited to, all fees, costs, and expenses described in Section 6(d) of the Note. All such costs and expenses shall constitute part of the Secured Obligations, and may be included in the computation of the amount owed to Beneficiary for purpose of foreclosing or otherwise enforcing this Deed of Trust.

**4.12 Financial Reports:** Within ninety (90) days after the end of each fiscal year of Grantor, Grantor will furnish to Beneficiary Grantor's operating statements for the Property as of the end of and for the preceding fiscal year, prepared against the budget for such year, in such detail as Beneficiary may require, certified as true and correct by Grantor.

**4.13 Priority of Leases:** To the extent Grantor has the right, under the terms of any Lease, to make such Lease subordinate to the lien hereof, Grantor will, at Beneficiary's request and Grantor's expense, take such action as may be required to effect such subordination. Conversely, Grantor will, at Beneficiary's request and Grantor's expense, take such action as may be necessary to subordinate the lien hereof to any future Lease designated by Beneficiary.

**4.14 Inventories; Assembly of Chattels:** Grantor will, from time to time at the request of Beneficiary, supply Beneficiary with a current inventory of the Chattels and the Intangible Personalty, in such detail as Beneficiary may require. Upon the occurrence of any Event of Default hereunder, Grantor will, at Beneficiary's request, assemble the Chattels and make them available to Beneficiary at any place designated by Beneficiary that is reasonably convenient to both parties.

**4.15 Compliance with Laws, Etc:** Grantor shall comply in all material respects with all applicable laws, rules, regulations, and orders, such compliance to include, but not be limited to, maintaining all permits and paying before the same become delinquent all taxes, assessments, and governmental charges imposed upon Grantor or the Property.

**4.16 Records and Books of Account:** Grantor shall keep accurate and complete records and books of account, in which complete entries will be made  reflecting all financial transactions relating to the Property.

**4.17 Inspection Rights:** At any reasonable time, and from time to time, Grantor shall permit Beneficiary, or any agents or representatives thereof, to examine and make copies of and abstracts from the records and books of account of, and to visit and inspect the Property and to discuss with Grantor the affairs, finances, and accounts of Grantor.

**4.18 Change of Executive Offices:** Grantor shall promptly notify Beneficiary if changes are made in the location of Grantor's primary executive offices.

**4.19 Further Assurances; Estoppel Certificates:** Grantor will execute and deliver to Beneficiary upon demand, and pay the costs of preparation and recording thereof, any further documents that Beneficiary may request to confirm or perfect the liens and

12

security interests created or intended to be created hereby, or to confirm or perfect any evidence of the Secured Obligations. Grantor will also, within ten (10) days after any request by Beneficiary, deliver to Beneficiary a signed and acknowledged statement certifying to Beneficiary, or to any proposed transferee of the Secured Obligations, (a) the balance of principal, interest, and other sums then outstanding under the Note, and (b) whether Grantor claims to have any offsets or defenses with respect to the Secured Obligations and, if so, the nature of such offsets or defenses.

## ARTICLE V

## GRANTOR'S NEGATIVE COVENANTS

**5.1 Waste and Alterations:** Grantor will not commit any waste with respect to the Property or the Chattels. Grantor shall not cause any part of the Property, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber, or other ground improvement, to be removed, demolished, or materially altered without the prior written consent of Beneficiary.

**5.2 Zoning and Private Covenants:** Grantor will not initiate, join in, or consent to any change in any zoning ordinance or classification, any change in the **"zone lot"** or **"zone lots"** (or similar zoning unit or units) presently comprising the Property, any transfer of development rights, any change in any private restrictive covenant, or any change in any other public or private restriction limiting or defining the uses that may be made of the Property or any part thereof, without the express written consent of Beneficiary. If under applicable zoning provisions the use of all or any part of the Property is or becomes a nonconforming use, Grantor will not cause such use to be discontinued or abandoned without the express written consent of Beneficiary.

**5.3 Interference With Leases or Operating Agreements:** Grantor will neither do nor neglect to do anything that may cause or permit the termination of any material Lease or cause or permit the withholding or abatement of any Rents payable under any such material Lease, or that may cause or permit the termination of any material Operating Agreement. If any of the following actions could have a materially adverse effect on the security granted to Beneficiary hereunder, except with the prior written consent of Beneficiary, Grantor will not (a) collect Rents from all or any part of the Property for more than one month in advance, (b) modify any Lease of all or any part of the Property or modify any Operating Agreement, (c) assign the Rents or any part thereof, or (d) consent to the cancellation or surrender of all or any part of any such Lease, except that Grantor may in good faith terminate any such Lease for nonpayment of Rents or other material breach by the Tenant.

**5.4 Transfer of Property:** Grantor will not convey, lease, further encumber, or otherwise transfer, either voluntarily or involuntarily **("Transfer"),** all or any part of the Property or any interest therein and Grantor's shareholders will not Transfer their interests in Grantor, without the prior written consent of Beneficiary, which may be withheld for any reason; provided, <u>however</u>, that Grantor's shareholders may Transfer any interest in Grantor to any person or entity that controls, is controlled by, or is under

13

common control with Grantor (as used herein, **"control"** shall mean possession of the power to direct or cause the direction of, directly or indirectly, the management, actions, or policies of an entity, or the power to veto major management or policy decisions of an entity, whether through ownership of voting securities, by contract, or otherwise).

**5.5 Assessments Against Property:**  Grantor will not, without the prior written approval of Beneficiary, which may be withheld for any reason, consent to or allow the creation of any so-called special improvement districts, benefit assessment districts or similar districts, or any other body or entity of any type, or allow to occur any other event, that would or might result in the imposition of any additional taxes, assessments, or other monetary obligations or burdens on the Property, and this provision shall serve as <u>RECORD NOTICE</u> to any such district or districts or any governmental entity under whose authority such district or districts exist or are being formed that, should Grantor or any other person or entity include all or any portion of the Property in such district or districts, whether formed or in the process of formation, without first obtaining Beneficiary's express written consent, the rights of Beneficiary in the Property pursuant to this Deed of Trust or following any foreclosure of this Deed of Trust, and the rights of any person or entity to whom Beneficiary might transfer the Property following a foreclosure of this Deed of Trust, shall be senior and superior to any taxes, charges, fees, assessments, or other impositions of any kind or nature whatsoever, or liens (whether statutory, contractual, or otherwise) levied or imposed, or to be levied or imposed, upon the Property or any portion thereof as a result of inclusion of the Property in such district or districts.

**5.6 Removal of Chattels:**  Grantor will not remove from the Property all or any part of the Chattels, unless the items sold, transferred, or removed are simultaneously replaced with similar items of equal or greater value.

**5.7 Change of Name:**  Grantor will not change its name or the name under which it does business, or adopt or begin doing business under any other name or assumed or trade name, without first notifying Beneficiary of its intention to do so and delivering to Beneficiary such executed modifications or supplements to this Deed of Trust (and to any financing statement that may be filed in connection herewith) as Beneficiary may require.

**5.8 Improper use of Property:**  Grantor will not use or permit the use of the Property for any purpose or in any manner that violates any applicable law, ordinance, or other governmental requirement, the requirements or conditions of any insurance policy, or any private covenant.

**5.9 Use of Proceeds:**  Grantor will not use any funds advanced by Beneficiary under the Loan Documents for any purpose other than as permitted by the provisions of the Loan Documents.

**ARTICLE VI**

**EVENTS OF DEFAULT**

Each of the following events will constitute a default (an**"Event of Default")** under this

14

Deed of Trust and under each of the other Loan Documents:

**6.1 Failure To Pay Note:** Grantor's failure to make any payment when due under the terms of the Note or any other Loan Document, and such failure continues for ten (10) calendar days;

**6.2 Due on Sale or Encumbrance:** The occurrence of any violation of any covenant contained in <u>Section 5..4;</u>

(a) Disbursements shall be made by Lender to the respective trades periodically upon Lender's receipt from Borrower, of a written certification and all appropriate invoices signed by Borrower, requesting disbursement of funds. Each certification must confirm that the work for which payment is requested has been performed and must be accompanied by a Conditional Lien Release from the trade. Each such certification shall constitute a representation by Borrower that the materials have been physically incorporated into the improvements free of liens and encumbrances and that the work conforms to the plans and specifications and to applicable statues, laws, ordinances, administrative rules, regulations and requirements and has been performed in a manner that meets or exceeds industry standards.  Lender shall make the advance called for by the certification upon inspection and receipt of documentation satisfactory to Lender in its sole and absolute discretion, unless an event of default (as defined in the Promissory Note) has occurred under the terms of this Agreement and such default has not been cured within any applicable cure period.

(b) Invoices shall be delivered to and approved by Lender prior to release of funds. Payment will be made directly to the respective trades after inspection and acceptance by lender or lender's agent of the completed improvement. Unconditional Lien Releases will be required with respect to each invoice payment prior to the next disbursement of funds.

(c) Borrower agrees to furnish Lender such lien waivers and or releases together with such paid receipts in proper form as Lender may reasonably require from time to time to assure itself of the expenditure of funds advanced in accordance with the terms of this Agreement.  An amount equal to ten percent (10.00%) of the new loan proceeds will be held until after receipt of waiver of all Mechanic's Lien duly executed and acknowledged by the general contractor and sub contractors, or trades.

**6.3 Other obligations:** The failure of Grantor to properly perform any obligation contained herein or in any of the other Loan Documents (other than the obligation to make payments under the Note or the other Loan Documents) and the continuance of such failure for a period of thirty (30) days following written notice thereof from Beneficiary to Grantor; <u>provided</u>, however, that if such failure is not curable within such thirty (30) day period, then, so long as Grantor commences to cure such failure within such thirty (30) day period and is continually and diligently attempting to cure to completion, such failure shall not be an Event of Default;

**6.4 Levy Against Property:** The levy against any real or personal property, or the like, or any part thereof, belonging to Grantor, or representing the security for the Note, of

15

any execution, attachment, sequestration or other writ;

**6.5 Appointment of Receiver:** The appointment of a trustee or receiver for the assets, or any part thereof, of Grantor, or the appointment of a trustee or receiver for any real or personal property,, or the like, or any part thereof, representing the security for the Note;

**6.6 Dissolution:    Insolvency,  or Bankruptcy.** The dissolution, termination, or liquidation of Grantor or of any other person or entity directly or indirectly liable for the Secured Obligations, or the making by any such person of any assignment for the benefit of creditors, or the appointment of a receiver, liquidator, or trustee of the property of any such person, or the filing of any petition for the bankruptcy, reorganization, or arrangement of any such person pursuant to the Federal Bankruptcy Code, or any similar state or federal statute, or the adjudication of any such person as bankrupt or insolvent;

**6.7 Misrepresentation:** If any representation or warranty made by Grantor, or any other party liable for the payment of the Note, whether as maker, endorser, guarantor, surety or otherwise, contained herein or in any of the other Loan Documents or any other instrument or document modifying, renewing, extending, evidencing, securing or pertaining to the Note, is false, misleading, or erroneous in any material respect;

**6.8 Judgments:** The failure of Grantor or any party liable for the payment of the Note, whether as maker, endorser, guarantor, surety, or otherwise, to pay any money judgment in excess of $10,000.00 against any such party before the expiration of thirty (30) days after such judgment becomes final and no longer appealable;

**6.9 Admissions Regarding Debts:** The written admission of Grantor, or any other party liable for the payment of the Note, whether as maker, endorser, guarantor, surety, or otherwise, of any such party☐s inability to pay such party's debts as they become due;

**6.10 Assertion of Priority:**    The assertion of any claim priority over this Deed of Trust, by title, lien, or otherwise, unless Grantor within thirty (30) days after such assertion either causes the assertion to be withdrawn or provides Beneficiary with such security as Beneficiary may require to protect Beneficiary against all loss, damage, or expense, including attorneys, fees and costs, that Beneficiary may incur in the event such assertion is upheld; or

**6.11 Loan Documents:** The occurrence of any default Grantor, or the occurrence of any event or circumstance defined as an event of default, under any of the Loan Documents other than this Deed of Trust.

## ARTICLE VII

## BENEFICIARY'S REMEDIES

Immediately upon or any time after the occurrence of Event of Default hereunder, Beneficiary may exercise any remedy available at law or in equity, including, but not

limited those listed below and those listed in the other Loan Documents in such sequence
or combination as Beneficiary may determine Beneficiary's sole discretion:

**7.1 Performance of Defaulted obligations:** Beneficiary may make any payment or
perform any other obligation under the Loan Documents that Grantor has failed to make
or perform, and Grantor hereby irrevocably appoints Beneficiary as the true and lawful
attorney-in-fact for Grantor to make any such payment and perform any such obligation
in the name of Grantor. All payments made and expenses (including attorneys, fees and
costs) incurred by Beneficiary in this connection, together with interest thereon the
"Interest Rate" (as defined in the Note) from the date paid or incurred until repaid, will be
part of the Secured obligation and will be immediately due and payable by Grantor to
Beneficiary.

**7.2   Specific Performance and injunctive Relief:** Notwithstanding the availability
of legal remedies, Beneficiary will be entitled to obtain specific performance, mandatory or
prohibitory injunctive relief, or other equitable relief requiring Grantor to cure or refrain
from repeating any default requiring Grantor to cure or refrain from repeating any default.

**7.3 Acceleration of Secured Obligations:**   Beneficiary may without notice or
demand, declare all of the Secured obligation immediately due and payable in full.

**7.4 Suit for Monetary Relief:**  With or without accelerating the maturity of the
Secured Obligations, Beneficiary may sue from time to time for any payment due under
any of the Loan Documents, or for money damages resulting from Grantor's default under
any of the Loan Documents.

**7.5 Possession of Property:**   Beneficiary may enter and take possession of the
Property without seeking or obtaining the appointment of a receiver, may employ a
managing agent for the Property, and may lease, license, or rent all or any part of the
Property, either in Beneficiary's name or in the name of Grantor, and may collect the
Rents, however generated.  Any Rents collected by Beneficiary under this Section will be
applied first toward payment of all expenses (including attorneys' fees and costs) incurred
by Beneficiary, together with interest thereon at the Interest Rate from the date incurred
until repaid, and the balance, if any, will be applied against the Secured obligations.

**7.6  Enforcement of Security Interests:**  Beneficiary may exercise all rights of a
secured party under the Code with respect to the Chattels and the Intangible Personalty,
including, but not limited to, taking possession of, holding, and selling the Chattels and
enforcing or otherwise realizing upon any Intangible Personalty.  Any requirement for
reasonable notice of the time and place of any public sale, or of the time after which any
private sale or other disposition is to be made, will be satisfied by Beneficiary's giving of
such notice to Grantor at least five (5) days prior to the time of any public sale or the time
after which any private sale or other intended disposition is to be made.

**7.7 Foreclosure Against Property:**  Beneficiary may foreclose this Deed of Trust,
insofar as it encumbers the Property, either by judicial action or through Trustee.  Any
foreclose by exercise of the power of sale herein contained shall be conducted by
Beneficiary and/or Trustee in accordance with California Civil Code Section 2924, et seq.

17

Beneficiary shall be required to give notice of any such foreclosure sale or the filing of any notice of default on all other persons or entities who have filed liens against the Property.

**7.8 Appointment of Receiver:**  Beneficiary shall be entitled, as a matter of absolute right and without regard to the value of any security for the Secured Obligations or the solvency of any person liable therefor, to the appointment of a receiver for the Property upon ex-parte application to any court of competent jurisdiction.  Grantor waives any right to any hearing or notice of hearing prior to the appointment of a receiver.  Such receiver and his agents shall be empowered (a) to take possession of the Property and any businesses conducted by Grantor or any other person thereon and any business assets used in connection therewith, (b) to exclude Grantor and Grantor's agents, servants, and employees from the Property, (c) to collect Rents, (d) to complete any construction that may be in progress, (e) to do such maintenance and make such repairs and alterations as the receiver deems necessary, (f) to use all stores of materials, supplies, and maintenance equipment on the Property and replace such items at the expense of the receivership estate, (g) to pay all taxes and assessments against the Property and the Chattels, all premiums for insurance thereon, all utility and other operating expenses, and all sums due under any prior or subsequent encumbrance, and (h) generally to do anything that Grantor could legally do if Grantor were in possession of the Property.  All expenses incurred by the receiver or his agents shall constitute a part of the Secured Obligations.  Any Rents collected by the receiver shall be applied first to the expenses of the receivership, including attorneys, fees and costs incurred by the receiver and by Beneficiary, together with interest thereon at the Interest Rate from the date incurred until repaid, and the balance shall be applied toward the Secured obligations or in such other manner as the court may direct.  Unless sooner terminated with the express consent of Beneficiary, any such receivership will continue until the Secured Obligations have been discharged in full or until title to the Property has passed after foreclosure sale and all applicable periods of redemption have expired.

**7.9 Right To Make Repairs, Improvements:**  Should any part of the Property come into the possession of Beneficiary, whether before or after an Event of Default, Beneficiary may use, operate, and/or make repairs, alterations, additions, and improvements to the Property for the purpose of preserving it or its value. Grantor covenants to promptly reimburse and pay to Beneficiary, at the place where the Note is payable, or at such other place as may be designated by Beneficiary in writing, the amount of all reasonable expenses (including the cost of any insurance, taxes, or other charges) incurred by Beneficiary in connection with its custody, preservation, use, or operation of the Property, together with interest thereon from the date incurred by Beneficiary at the Interest Rate, and all such expenses, costs, taxes, interest, and other charges shall be a part of the Secured Obligations.  It is agreed, however, that the risk of accidental loss or damage to the Property is undertaken by Grantor and, except for Beneficiary's willful misconduct or gross negligence, Beneficiary shall have no liability whatsoever for decline in value of the Property, for failure to obtain or maintain insurance, or for failure to determine whether any insurance ever in force is adequate as to amount or as to the risks insured.

## ARTICLE VIII

## ASSIGNMENT OF LEASES AND RENTS

**8.1 Assignment of Leases and Rents:**  As further security for the Secured obligations, Grantor hereby absolutely grants, transfers, and assigns unto Beneficiary all Rents now or hereafter due or payable for the occupancy, possession, or use of all or any part of the Property, and all Leases, whether written or oral, with all security therefor, including all guaranties thereof, now or hereafter affecting the Property; on the condition that Beneficiary hereby grants to Grantor a license to collect and retain such Rents prior to the occurrence of any Event of Default hereunder.  Such license shall be revocable by Beneficiary without notice to Grantor at any time after the occurrence of an Event of Default.  Grantor represents that the Rents and the Leases have not been heretofore sold, assigned, transferred, or set over by any instrument now in force and will not at any time during the life of this assignment be sold, assigned, transferred or set over by Grantor or by any person or persons whosoever.  Failure of Beneficiary at any time or from time to time to enforce the assignment of Rents and Leases under this Section shall not in any manner prevent its subsequent  enforcement, and Beneficiary is not Obligated to collect anything hereunder, but is Accountable only for sums actually collected.

**8.2 Further Assignments:**  Grantor shall give Beneficiary at any time upon demand any further or additional forms of assignment of transfer of such Rents, Leases, and security as may be reasonably requested by Beneficiary, and shall deliver to Beneficiary executed copies of all such leases and security.

**8.3 Application of Rents:**  Beneficiary shall be entitled to deduct and retain a just and reasonable compensation from Rents received hereunder for its services or that of its agents in collecting such Rents.  Any Rents received by Beneficiary hereunder may be applied when received from time to time in payment of any taxes, assessments, or other liens affecting the Property regardless of the delinquency, such application to be in such order as Beneficiary may determine.  The acceptance of this Deed of Trust by Beneficiary or the exercise of any rights by it hereunder shall not be, or be construed to be, an affirmation by it of any Lease nor an assumption of any liability under any Lease.

**8.4 Collection of Rents:**  Upon or at any time after an Event of Default shall have occurred and be continuing, Beneficiary may declare all sums secured hereby immediately due and payable, and may, at its option, without notice, and whether or not the Secured Obligations shall have been declared due and payable, either in person or by agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, (i) enter upon, take possession of, manage, and operate the Property, or any part thereof (including, but not limited to, making necessary repairs, alterations, and improvements to the Property); (ii) make, cancel, enforce, or modify Leases; (iii) obtain and evict Tenants; (iv) fix or modify Rents; (v) do any acts that Beneficiary deems reasonably proper to protect the security thereof; and (vi) either with or without taking possession of the Property, in its own name sue for or otherwise collect receive such Rents, and. including those past due and unpaid. In connection with the foregoing, Beneficiary shall be entitled and empowered to employ attorneys, and management, rental, and other agents in and about the Property in order to accomplish the matters that Beneficiary is empowered to do, and in the event

19

Beneficiary shall itself perform such matters, Beneficiary shall be entitled to charge and receive reasonable management, rental, and other fees therefor as may be customary in the area in which the Property is located; and the reasonable fees, charges, costs, and expenses of Beneficiary or such persons shall be additional Secured Obligations. Beneficiary may apply all funds collected as aforesaid, less costs and expenses of operation and collection, including reasonable attorneys, and agents, fees and costs, and other charges, costs, and expenses, as aforesaid, upon any Secured Obligations, and in such order as Beneficiary may determine.   The entering upon and taking possession of the Property, the collection of such Rents, and the application thereof as aforesaid shall not cure or waive a default or waive, modify or affect notice of default under this Note or this Deed of Trust or invalidate any act done pursuant to such notice.

**8.5 Authority of Beneficiary:**  Any Tenants of any part of the Property are hereby authorized to recognize the claims of Beneficiary hereunder without investigating the reason for a action taken by Beneficiary, or the validity or the amount of indebtedness owing to Beneficiary, or the existence of a default in the Note or this Deed of Trust, or under or by reason of this assignment of Rents and Leases, or the application to made by Beneficiary of any amounts to be paid to Beneficiary. The sole signature of Beneficiary shall be sufficient for the exercise of any rights under this assignment and the sole receipt of Beneficiary for any sums received shall be a full discharge and release therefor to any such Tenant on the Property.  Checks for all or any part of the rentals collected under this assignment of Rents and Leases shall be drawn to the exclusive order of Beneficiary.

**8.6 Indemnification of Beneficiary:**  Nothing herein contained shall be deemed to obligate Beneficiary to perform or discharge any obligation, duty, or liability of lessor under any Lease, and Grantor shall and does hereby indemnify and hold Beneficiary harmless from any and all liability, loss, or damage that Beneficiary may or might incur under any Lease or by reason of the assignment; and any and all such liability, loss, or damage incurred by Beneficiary, together with the costs an expenses, including reasonable attorneys' fees and costs incurred by Beneficiary in defense of any claims or demand therefor (whether successful or not), shall be additional Secure Obligations, and Grantor shall reimburse Beneficiary therefor or  demand.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

**9.1 Time of Essence:**    Time is of the essence with respect to all provisions of the Loan Documents.

**9.2 Rights and Remedies Cumulative:**  Beneficiary's rights and remedies under each of the Loan Documents are cumulative of the right and remedies available to Beneficiary under each of the other Loan Documents and those otherwise available to Beneficiary at law or in equity.  No act of Beneficiary shall be construed as an election to proceed under any particular provision of any Loan Document to the exclusion of any other provision in the same or any other Loan Document, or as any election of remedies to the exclusion of any other remedy that may then or there after be available to Beneficiary.

**9.3 No Implied Waivers:**  Beneficiary shall not be deemed to have waived any provision of any Loan Document unless such waiver is in writing and is signed by Beneficiary. Without limiting the generality of the preceding sentence, neither Beneficiary's acceptance of any payment with knowledge of a default by Grantor, nor any failure by Beneficiary to exercise any remedy following a default by Grantor shall be deemed a waiver of such default, and no waiver by Beneficiary of any particular default on the part of Grantor shall be deemed a waiver of any other default or of any similar default in the future.

**9.4 No Third Party Rights:**  No person shall be a third party beneficiary of any provision of any of the Loan Documents. All provisions of the Loan Documents favoring Beneficiary are intended solely for the benefit of Beneficiary, and no third party shall be entitled to assume or expect that Beneficiary will not waive or consent to modification of any such provision in Beneficiary's sole discretion.

**9.5 Preservation of Liability and Priority:**  Without affecting the liability of Grantor or of any other person (except a person expressly released in writing) for payment and performance of all of the Secured obligations, and without affecting the rights of Beneficiary with respect to any security not expressly released in writing, and without impairing in any way the priority of this Deed of Trust over the interests of any person acquired or first evidenced by recording subsequent to the recording hereof, Beneficiary may, either before or after the maturity of the Note, and without notice or consent: (a) release any person liable for payment or performance of all or any part of the Secured Obligations; (b) make any agreement altering the terms of payment or performance of all or any of the Secured Obligations; (c) exercise or refrain from exercising, or waive, any right or remedy that Beneficiary may have under any of the Loan Documents; (d) accept additional security of any kind for any of the Secured Obligations; or (e) release or otherwise deal with any real or personal property securing the Secured Obligations.  Any person acquiring or recording evidence of any interest of any nature in the Property, the Chattels, or the Intangible Personalty shall be deemed, by acquiring, such interest or recording any evidence thereof, to have agreed and consented to any or all such actions by Beneficiary.

**9.6 Subrogation of Beneficiary:**  Beneficiary shall be subrogated to the lien of any previous encumbrance discharged with funds advanced by Beneficiary under the Loan Documents, regardless of whether such previous encumbrance has been released of record.

**9.7 Notices:**  Any notice required or permitted to be given by Grantor or Beneficiary under this Deed of Trust shall be in writing and will be deemed given (a) upon personal delivery, (b) on the first business day after receipted delivery to a courier service that guarantees next-business-day delivery, or(c)on the third business day after mailing, by registered or certified United States mail, postage prepaid, in any case to the appropriate party at its address set forth below:

If to Grantor:      Carbon Beach Partners, LLC
                    c/o Jordinia Operations, Inc.

21

5150 Overland Avenue
Culver City, California 90230


If to Beneficiary:              Active Mortgage Corp.
                                5150 Overland Avenue
                                Culver City, California 90230


Either  party may change such party's address for notices or copies of notices by giving notice to the other party in accordance with this Section.

   **9.8 Defeasance:** upon payment and performance in full of all of the Secured obligations, Beneficiary will execute and deliver to Grantor such documents as may be required to release this Deed of Trust of record.

   **9.9 Illegality:**  If any provision of this Deed of Trust is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Deed of Trust, the legality, validity, and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby, and in lieu of each such illegal, invalid, or unenforceable provision there shall be added automatically as a part of this Deed of Trust a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.  If the rights and liens created by this Deed of Trust shall be invalid or unenforceable as to any part of the Secured obligations, then the unsecured portion of the Secured obligations shall be completely paid prior to the payment of the remaining and secured portion of the Secured Obligations, and all payments made on the Secured Obligations shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Secured obligations.

   **9.10 Obligations Binding Upon Grantor's Successors:**    This Deed of Trust is binding upon Grantor and Grantor's successors and assigns, and shall inure to the benefit of Beneficiary and its successors and assigns, and the provisions hereof shall likewise be covenants running with the land.

   **9.11 Governing Laws:** The substantive laws of the State of California shall govern the validity, construction, enforcement, and interpretation of this Deed of Trust.

   **9.12 Exhibits:**     <u>Exhibit A</u>   is   attached hereto and incorporated herein by reference.

        IN WITNESS WHEREOF, Grantor has executed and delivered this Deed of Trust as of the date set forth below.

Date:_____

22

**"Grantor"**

**Carbon Beach Partners, LLC**


By: _____
Name:  Michael Kest
Title:  President of Jordinia Operations, Inc.
Its: Managing Member

**<u>Exhibit A</u>**
**<u>Legal Description for Eight Lots</u>**

**<u>Exhibit C</u>**
**<u>Exhibit 1 to Form UUC-1</u>**

EXHIBIT A TO UCC-1

This financing statement covers all present and future personal property of Debtor including without limitation the following types (or items) of property:

(a)     all personal property of any kind or nature whatsoever, whether tangible or intangible and whether now owned or hereafter acquired, in which Debtor now has or hereafter acquires an interest and which is used in the construction of, or is placed upon, or is derived from or used in connection with the maintenance, use, occupancy or enjoyment of, the Property, including, but not limited to: (i) the Accessories; (ii) the Accounts; (iii) all franchise, license, management or other agreements with respect to the operation of the Real Property or the business conducted therein and all general intangibles (including payment intangibles, trademarks, trade names, goodwill, software and symbols, but excluding Debtor's rights to receive payments under all Swap Contracts) related to the Real Property or the operation thereof; (iv) all sewer and water taps, appurtenant water stock or water rights, allocations and agreements for utilities, bonds, letters of credit, permits, certificates, licenses, guaranties, warranties, causes of action, judgments, Claims, profits, security deposits, utility deposits, and all rebates or refunds of fees, Taxes, assessments, bonds charges or deposits paid to any Governmental Authority or third party related to the Real Property or the operation or construction or sale thereof; (v) all escrow proceeds and all insurance policies held by Debtor with respect to the Property or Debtor's operation or construction or sale thereof; and (vi) all money, instruments and documents (whether tangible or electronic) arising from or by virtue of any transactions related to the Property or owned by Debtor, including any and all bonds or deposits therefor, and all deposits and deposit accounts of Debtor, together with all Additions to and Proceeds of all of the foregoing (collectively, the "Personalty"); any and all judgments, awards of damages (including severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation; the insurance claims under and the proceeds of any and all policies of insurance covering the Property or any part thereof, including all returned and unearned premiums with respect to any insurance relating to such Property, in each case whether now or hereafter existing or arising; and all of Debtor's right, title and interest in, but not any of Debtor's obligations or liabilities under, all Design and Construction Documents and all Contracts of Sale.

(b)     All present and future accessories, additions, attachments, replacements and substitutions of, for or to any or all of the property described in paragraph (a) above and all proceeds and products thereof.

As used above, the following terms shall have the following meanings:

"Accessories" means all fixtures, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies and other articles of personal property, of every kind and character, tangible and intangible (including software embedded therein), now owned or hereafter acquired by Debtor, which are now or hereafter attached to or situated in, on or about the Land or Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired

EXHIBIT A

(whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or Improvements, and all Additions to the foregoing, all of which are hereby declared to be permanent accessions to the Land.

"Accounts" means all accounts, including bank and deposit accounts, of Debtor, within the meaning of the Uniform Commercial Code of the State, derived from or arising out of the use, occupancy or enjoyment of the Property or for services rendered therein or thereon.

"Additions" means any and all alterations, additions, accessions and improvements to property, substitutions therefor, and renewals and replacements thereof.

"Claim" means any liability, suit, action, claim, demand, loss, expense, penalty, fine, judgment or other cost of any kind or nature whatsoever, including fees, costs and expenses of attorneys, consultants, contractors and experts.

"Condemnation" means any taking of title to, use of, or any other interest in the Property under the exercise of the power of condemnation or eminent domain, whether temporarily or permanently, by any Governmental Authority or by any other Person acting under or for the benefit of a Governmental Authority.

"Condemnation Awards" means any and all judgments, awards of damages (including severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation.

"Deed of Trust" means any deed or deeds of trust by Debtor in favor of Secured Party.

"Design and Construction Documents" means, collectively, (a) all contracts for services to be rendered, work to be performed or materials to be supplied in the development of the Land or the construction or repair of Improvements, including all agreements with architects, engineers or contractors for such services, work or materials; (b) all plans, drawings and specifications for the development of the Land or the construction or repair of Improvements; (c) all permits, licenses, variances and other rights or approvals issued by or obtained from any Governmental Authority or other Person in connection with the development of the Land or the construction or repair of Improvements; and (d) all amendments of or supplements to any of the foregoing.

"Expenses" means all fees, charges, costs and expenses of any nature whatsoever incurred at any time and from time to time by Secured Party in making, funding, administering or modifying the Loan, in negotiating or entering into any "workout" of the Loan, or in exercising or enforcing any rights, powers and remedies of Secured Party, including reasonable attorneys' fees, court costs, receiver's fees, management fees and costs incurred in the repair, maintenance and operation of, or taking possession of, or selling, the Property.

"Governmental Authority" means any governmental or quasi-governmental entity, including any court, department, commission, board, bureau, agency, administration, service, district or other instrumentality of any governmental entity.

EXHIBIT A

"<u>Improvements</u>" means all buildings, structures and other improvements now or hereafter existing, erected or placed on the Land, together with any off-site improvements owned by Debtor in any way used or to be used in connection with the use, enjoyment, occupancy or operation of the Land.

"<u>Insurance Proceeds</u>" means the insurance claims under and the proceeds of any and all policies of insurance covering the Property or any part thereof, including all returned and unearned premiums with respect to any insurance relating to such Property, in each case whether now or hereafter existing or arising.

"<u>Leases</u>" means all leases, license agreements and other occupancy or use agreements (whether oral or written), now or hereafter existing, which cover or relate to the Property or any part thereof, together with all options therefor, amendments thereto and renewals, modifications and guaranties thereof, including any cash or security deposited under the Leases to secure performance by the tenants of their obligations under the Leases, whether such cash or security is to be held until the expiration of the terms of the Leases or applied to one or more of the installments of rent coming due thereunder.

"<u>Letter of Credit</u>" means any letter of credit issued by Secured Party for the account of Debtor or its nominee in connection with the development of the Land or the construction of the Improvements, together with any and all extensions, renewals or modifications thereof, substitutions therefor or replacements thereof.

"<u>Loan</u>" means any loan from Secured Party to Debtor.

"<u>Obligations</u>" means all present and future debts, obligations and liabilities of Debtor to Secured Party, including the obligations: (a) to pay all principal, interest, late charges, prepayment premiums (if any) and other amounts due; (b) to pay all Expenses, indemnification payments, fees and other amounts due at any time, together with interest thereon as herein or therein provided; (c) to perform, observe and comply with all of the other terms, covenants and conditions, expressed or implied, which Debtor is required to perform, observe or comply with; and (d) to pay and perform all future advances and other obligations that Debtor or any successor in ownership of all or part of the Real Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Secured Party.

"<u>Person</u>" means an individual, a corporation, a partnership, a joint venture, a limited liability company, a trust, an unincorporated association, any Governmental Authority or any other entity.

"<u>Proceeds</u>," when used with respect to any of the Property, means all proceeds of such Property, including all Insurance Proceeds and all other proceeds within the meaning of that term as defined in the Uniform Commercial Code of the State.

"<u>Property</u>" means the Real Property and the Personalty and all other rights, interests and benefits of every kind and character which Debtor now has or hereafter acquires in, to or for the benefit of the Real Property and/or the Personalty and all other property and rights used or useful in connection therewith, including all Leases, all Rents, all Condemnation Awards, all Proceeds, and all of Debtor's right, title and interest in and to all Design and Construction Documents, and all Contracts of Sale.

EXHIBIT A

"Real Property" means that real property located at 9503 Rubio Avenue and 9509 Rubio Avenue, Northridge, California (the "Land") and Improvements, together with (a) all estates, title interests, title reversion rights, remainders, increases, issues, profits, rights-of-way or uses, additions, accretions, servitudes, strips, gaps, gores, liberties, privileges, water rights, water courses, alleys, passages, ways, vaults, licenses, tenements, franchises, hereditaments, appurtenances, easements, rights of ingress or egress, parking rights, timber, crops, mineral interests and other rights, now or hereafter owned by Debtor and belonging or appertaining to the Land or Improvements; (b) all Claims whatsoever of Debtor with respect to the Land or Improvements, either in law or in equity, in possession or in expectancy; (c) all estate, right, title and interest of Debtor in and to all streets, roads and public places, opened or proposed, now or hereafter adjoining or appertaining to the Land or Improvements; and (d) all options to purchase the Land or Improvements, or any portion thereof or interest therein, and any greater estate in the Land or Improvements, and all Additions to and Proceeds of the foregoing.

"Rents" means all of the rents, royalties, issues, profits, revenues, earnings, income and other benefits of the Property, or arising from the use or enjoyment of the Property, including all such amounts paid under or arising from any of the Leases and all fees, charges, accounts or other payments for the use or occupancy of rooms or other public facilities within the Real Property.

"State" means the state of California.

"Taxes" means all taxes and assessments, whether general or special, ordinary or extraordinary, or foreseen or unforeseen, which at any time may be assessed, levied, confirmed or imposed by any Governmental Authority or any community facilities or other private district on Debtor or on any of its properties or assets or any part thereof or in respect of any of its franchises, businesses, income or profits.

# Exhibit D
# Budget for New Loan

**VILLAS AT CARBON BEACH**
**PROJECT CASH FLOW**
3/5/2010

**ASSUMPTIONS**

| | |
|---|---|
| Average Unit Size | 3,200 |
| Average Price per Foot | $ 784.38 |
| Average Retail Price | $2,510,000 |
| Absorption | 2 / month |

**SALES ACTIVITY**

| | Assumptions | Total | 0 (Month) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit Starts | | 8 | | 8 | | | | | | | | | | | | | | |
| Cumulative Starts | | 8 | | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 |
| Unit Completions | | 8 | | | | | | | | | 8 | | | | | | | |
| Cumulative Completions | | 8 | | | | | | | | | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 |
| Sales | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | |
| Cumulative Sales | | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | | | |
| Closings | | 8 | | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Cumulative Closings | | 8 | | | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

**REVENUES**

| | Assumptions | Total | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Revenue | | 20,080,000 | | | | | | | | | 2,510,000 | 2,510,000 | 2,510,000 | 2,510,000 | 2,510,000 | 2,510,000 | 2,510,000 | 2,510,000 |
| Average Lot Premium | 10,000 | | | | | | | | | | | | | | | | | |
| Less: | | | | | | | | | | | | | | | | | | |
| City Fee | (30,000) per budget | (240,000) | | | | | | | | | (30,000) | (30,000) | (30,000) | (30,000) | (30,000) | (30,000) | (30,000) | (30,000) |
| Commissions | -5.0% | (1,004,000) | | | | | | | | | (125,000) | (125,000) | (125,000) | (125,000) | (125,000) | (125,000) | (125,000) | (125,000) |
| Closing Costs | -1.0% | (200,600) | | | | | | | | | (25,100) | (25,100) | (25,100) | (25,100) | (25,100) | (25,100) | (25,100) | (25,100) |
| 3  Finish Work (Paid at closings) | (74,616) | (596,928) | | | | | | | | | (74,616) | (74,616) | (74,616) | (74,616) | (74,616) | (74,616) | (74,616) | (74,616) |
| Warranty | (5,000) | (40,000) | | | | | | | | | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| Net Revenue | | 17,998,272 | | | | | | | | | 2,249,784 | 2,249,784 | 2,249,784 | 2,249,784 | 2,249,784 | 2,249,784 | 2,249,784 | 2,249,784 |
| Cumulative Sales Revenue | | 17,998,272 | | | | | | | | | 2,249,784 | 4,499,568 | 6,749,352 | 8,999,136 | 11,248,920 | 13,498,704 | 15,748,488 | 17,998,272 |

**COSTS**

| | Assumptions | Total | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Payoff | | | | | | | | | | | | | | | | | | |
| 2  Developer Overhead | per budget | 170,000 | | 170,000 | | | | | | | | | | | | | | |
| 2  Property Taxes | per budget | 200,235 | | 66,745 | | | | | | | | 66,745 | | | | 66,745 | | |
| 1  Insurance | per budget | 174,408 | | 174,408 | | | | | | | | | | | | | | |
| 1  Marketing Overhead | 10,000 | 80,000 | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | | | | | | |
| 1  Legal Expense | 5,000 | 75,000 | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| 1  Bankruptcy Expense | 1,000 | 15,000 | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 1  Other Indirects | 10,000 | 110,000 | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| 2  General Conditions | 19,375 | 77,501 | | 19,375 | 19,375 | 19,375 | 19,375 | | | | | | | | | | | |
| 2  Site Work/Landscaping | per budget | 344,631 | | | 172,315 | 172,315 | | | | | | | | | | | | |
| 2  Direct Costs | | 881,457 | | | 293,819 | 293,819 | 293,819 | | | | | | | | | | | |
| 2  Finish Work (Paid at closings) | | | | | | | | | | | | | | | | | | |
| 2  Contractor Fee | | | | | | | | | | | | | | | | | | |
| 2  Loan Points on $2.7M | 3.0% | 81,000 | | 81,000 | | | | | | | | | | | | | | |
| 2  Security | 5,052 | 40,420 | | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | | | | | | | |
| 1  Previously Paid | | 77,713 | | 77,713 | | | | | | | | | | | | | | |
| 2  Management Fee | 25,000 | 150,000 | | | | | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | | | | | | |
| 1  Interest - Priming Loan | 12.0% | 147,367 | | 10,000 | 6,109 | 12,361 | 18,675 | 23,329 | 26,428 | | 27,778 | 7,594 | | | | | | |
| 3  Interest - Builders Bank - $13.5M | 6.0% | 655,214 | | | 67,500 | 67,500 | 67,500 | 67,500 | 67,500 | 67,500 | 67,500 | 57,408 | 46,923 | 36,013 | 25,049 | 14,031 | 3,291 | |
| Contingency | 100,000 | 100,000 | | | | | | | | | 100,000 | | | | | | | |
| **TOTALCOSTS** | | **3,479,946** | | **610,919** | **625,171** | **631,423** | **465,422** | **176,257** | **133,644** | **134,981** | **231,331** | **152,746** | **67,923** | **57,013** | **46,049** | **101,776** | **24,291** | **21,000** |
| **CASH FLOW** | | **14,518,326** | **(610,919)** | **(610,919)** | **(625,171)** | **(631,423)** | **(465,422)** | **(176,257)** | **(133,644)** | **(134,981)** | **2,018,453** | **2,097,038** | **2,181,861** | **2,192,771** | **2,203,735** | **2,148,008** | **2,225,493** | **2,228,784** |

**CASH RESERVE BALANCE**

| | Assumptions | Total | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Investment | | 14,518,326 | (610,919) | (610,919) | (625,171) | (631,423) | (465,422) | (176,257) | (133,644) | (134,981) | 2,018,453 | 2,097,038 | 2,181,861 | 2,192,771 | 2,203,735 | 2,148,008 | 2,225,493 | 2,228,784 |
| Cumulative Investment | | 14,518,326 | (610,919) | (610,919) | (625,171) | (631,423) | (465,422) | (176,257) | (133,644) | (134,981) | | | | | | | | |
| Net Cash Balance | 0.0% | | | | | | | | | | | | | | | | | |
| Interest Accrual | | | | | | | | | | | | | | | | | | |
| Cash Balance | | | | | | | | | | | | | | | | | | |

**PRIMING LOAN**

| | Assumptions | Total | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Investment | | 14,518,326 | (610,919) | (610,919) | (625,171) | (631,423) | (465,422) | (176,257) | (133,644) | (134,981) | 2,018,453 | 2,097,038 | 2,181,861 | 2,192,771 | 2,203,735 | 2,148,008 | 2,225,493 | 2,228,784 |
| Equity | | | | | | | | | | | | | | | | | | |
| Debt | | | | | | | | | | | | | | | | | | |
| Cumulative Debt | | | | | | | | | (2,642,836) | (2,777,817) | (759,364) | 1,337,674 | 3,519,535 | 5,712,306 | 7,916,041 | 10,064,049 | 12,289,542 | 14,518,326 |
| Interest Payments | 0.0% | | | | | | | | (2,031,917) | (2,166,898) | (148,445) | 1,948,593 | 4,130,454 | 6,323,225 | 8,526,960 | 10,674,968 | 12,900,461 | 15,129,245 |
| Project Cash Flow | | 14,518,326 | (610,919) | (610,919) | (625,171) | (631,423) | (465,422) | (176,257) | (133,644) | (134,981) | 2,018,453 | 2,097,038 | 2,181,861 | 2,192,771 | 2,203,735 | 2,148,008 | 2,225,493 | 2,228,784 |

**BUILDERS BANK**

| | Assumptions | Total | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Investment | | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | | | | | | | | |
| Equity | | | | | | | | | | | | | | | | | | |
| Debt | | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (13,500,000) | (9,384,509) | (7,202,648) | (5,009,877) | (2,806,142) | (658,134) | 1,567,359 | 3,796,143 | |
| Cumulative Debt | | | (13,500,000) | | | | | | | (11,481,547) | (9,384,509) | (7,202,648) | (5,009,877) | (2,806,142) | (658,134) | 1,567,359 | 3,796,143 | |
| Interest Payments | 0.0% | | | | | | | | | | | | | | | | | |
| Project Cash Flow | | 1,018,326 | (13,500,000) | | | | | | | | | | | | | | | |