


**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Carbon Beach Partners, LLC<br><br>Debtor(s). | Case No.: 1:09-bk-24657-GM<br><br>Chapter 11<br><br>**MEMORANDUM OF OPINION REGARDING DEBTOR'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 9019(a) TO APPROVE SETTLEMENT AGREEMENT WITH ARCH SPECIALITY INSURANCE COMPANY**<br><br>Date: July 3, 2012<br>Time: 10:00 a.m.<br>Courtroom: 303 |

Debtor moves for FRBP 9019(a) approval of a settlement with Arch Specialty Insurance Company ("Arch").

**Facts**

Arch Specialty Insurance Company ("Arch"), provided general commercial liability insurance to the debtor for the period from April 30, 2004 through July 1, 2009, with

continuing third-party liability "tail" coverage extending no more than ten years upon completion of work on the debtor's Villas at Carbon Beach project (the "Policy").

In particular, the Policy provides in relevant part:

**Commercial General Liability Coverage Form**

1.a We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

1.b. This insurance applies to "bodily injury" or "property damage" only if:

. . .

(2) The "bodily injury" or "property damage" occurs during the policy period.

10.d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**Construction Project Endorsement**

….

E.2. "Your work" will be deemed completed at the earliest of the following times:

a. Completion and acceptance of the entire project shown above by all parties designated in its construction agreement.

b. When all the work to be done at the site where the "bodily injury" or "property damage" occurred has been completed if the project shown above calls for work at more than one site;

c. When that part of the work done at the project shown above has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

….

F.1. Solely with respect to liability for "property damage" included in the "products – completed operations hazard", the insurance provided by this policy is extended for an additional period of time. This coverage extension will commence at the time that "your work" is deemed to be completed, as described in subparagraph E.2. of this endorsement. The coverage extension period will be equal to the applicable statue of limitations for any claim of "suit" for "property damage". However, such extension will not exceed ten (10) years.

….

F.3. If this policy is cancelled by you for any reason, or by us for non-payment of premium, prior to the point in time that "your work" is deemed to be complete (as described in subparagraph E.2. of this endorsement) then the "products – completed operations hazard" extension described herein will not apply."

F.4. We may cancel the insurance provided by the coverage extension described herein if you fail to pay any additional premium due to us as determined by a premium audit."

**Named Insured Endorsement**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entities as a Named Insured:

CARBON BEACH PARTNERS, LLC AND ALL CONTRACTORS AND SUBCONTRACTORS IN THE OWNER CONTROLLED INSURANCE PROGRAM (OCIP)

VILLA DEVELOPMENT, LLC

SCKG COMPANY LIMITED

HILL CONTRACTING GROUP, INC.

J.A. HILL CORPORATION

Debtor filed for chapter 11 relief on 11/03/09.

The premiums specified under the Policy were only deposits and the actual premium cost of the Policy would be determined at the close of an audit. On about June 15, 2010, Arch, through its broker, billed the debtor $448,100 for additional premiums found to be owing in the audit. This premium adjustment statement lists both the ‘Policy Period” and the “Audit Period” as “04/30/04 - 07/1/09”.

Arch’s counsel asked debtor’s counsel in November of 2010 whether debtor would assume the policy and was told that the decision was on hold pending confirmation of the plan. Arch’s counsel asked again in June 2011 and was told that the bank foreclosed on the property and that the policy would be deemed rejected.

In 8/11, Arch filed a motion seeking approval of administrative claim status for this $448,100, arguing (i) the claim was not due and owing until after the petition and thus is an administrative expense, or, alternatively (ii) the debtor’s estate benefits from the “tail” coverage.

Debtor opposed the motion, arguing that at most Arch may have a pre-petition claim. The policy was not an executory contract, as the policy term had lapsed pre-petition and the tail never came into operation. (The tail coverage commenced at the time that the Villas at Carbon Beach project was completed, but this property was

foreclosed upon by Builders Bank before completion.) (Endorsement 12 of the policy.) Debtor had full insurance from another carrier post-petition, so this policy did not benefit the estate.

The debtor and Arch have reached agreement and entered into a settlement agreement, dated 4/10/12, essentially providing that the Policy "is hereby terminated and deemed null, void and of no force and effect, ab initio and that Arch will have no liability whatsoever for any claims asserted thereunder", that Arch asserts the right to a $448,180 unsecured claim, which the debtor may or may not dispute, and that the parties release each other from all other claims.

**Motion**

Debtor maintains that it has met its burden of establishing that the proposed settlement was negotiated in good faith, is fair and equitable, reasonable and in the best interests of creditors. Applying the factors set forth by the Ninth Circuit in Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986):

1. Probability of success in litigation: Debtor has virtually 0% chance of winning any litigation to recover under the policy (which it has disclaimed) as coverage expired pre-petition, the tail never came into effect and debtor is unaware of any coverable construction defects. Debtor has 0% of doing better on the administrative claim litigation since Arch is dropping assertions of administrative claim status and debtor has reserved its right to dispute Arch's unsecured claim.
2. Difficulties of collection: n/a

3. Complexity of litigation: if debtor were to attempt to collect under the policy, the litigation would be complex and expensive. Litigation on the administrative claim would also have costs and delay resolution of the case.
4. Interests of creditors: benefits to estate outweigh costs. Debtor is giving up rights under the Policy, which it believes are without value, and is receiving release of a large administrative claim.

**Opposition**

Builders Bank ("Builders") and its subsidiary, SoCal X ("SoCal"), which is the current owner of the Carbon Beach Property through foreclosure, oppose the motion: Builders opposes as a creditor and SoCal opposes as the third party beneficiary of the Policy.

Builders argues that:

1. Debtor's probability of success is high: the insurance contract lapsed pre-petition and is clearly not entitled to administrative claim priority. Arch missed the bar date, so it clearly has no allowable unsecured claim.
2. No difficulties of collection, because debtor is not attempting to collect from Arch.
3. Litigation of Arch's claim would not be difficult and debtor has not presented the evidence establishing complexity to enable the court to form an "educated estimate of the complexity, expense, and likely duration of such litigation." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968).

4. Settlement is harmful to Builder and SoCal and they object strenuously. Arch's unsecured claim will dilute Builder's. SoCal will lose a $1million claim against Arch as a result of the rescission of the Policy

Builders and SoCal make additional arguments. A&C also requires that the settlement be negotiated in good faith: this settlement was not entered into to benefit the estate, but to harm SoCal. The settlement exceeds the permissible bounds of settlements by releasing the claims of third parties not party to the settlement (i.e. SoCal), which are unrelated to the administrative status of Arch's claim. Finally, SoCal argues that California law prevents an insurance company from escaping already accrued liability under a policy by cancelling the policy, so that the proposed rescission violates California insurance law.

**Reply**

The debtor and Arch both filed late replies to Builders' opposition, which the court is not considering.

**Oral Argument**

Counsel for Builders and the Debtor both offered oral argument at the July 3, 2012 hearing on this motion. Over the course of the hearing it became clear that Builders' issue with this proposed settlement is not its effect on Builders' rights as an unsecured creditor. Rather, the real issue at stake is the settlement agreement provision that the Policy be declared void *ab initio*, etc.

**Analysis**

**Does Builders have standing to object to the proposed settlement?**

Much of Builder's opposition is devoted to standing. It seems quite clear that Builders, as a holder of unsecured claims against the debtor, has standing to oppose approval of the proposed settlement because of its effect on the estate. SoCal has standing to object to the proposed settlement to the extent it violates a property right of SoCal.

**Is the proposed settlement negotiated in good faith, is it fair and equitable, reasonable and in the best interests of creditors?**

> "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." In re A&C Props., 784 F.2d 1377, 1380-81 (9th Cir. 1986). Before approving a settlement agreement, the bankruptcy court is charged with considering the "fairness, reasonableness, and adequacy" of the agreement. Id. at 1381. The bankruptcy court must consider a number of factors in making this determination:
>
> > (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

United States v. Edwards, 595 F.3d 1004 (9th Cir. 2010)(citing A&C Props.).

> A compromise agreement allows the trustee and the creditors to avoid the expenses and burdens associated with litigation. Id. at 1380-81. In general, compromises are favored in bankruptcy actions. In re Stein, 236 B.R. 34, 37 (D. Ore. 1999). The court generally gives deference to a trustee's business judgment. See In re Pac. Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).
>
> Although a bankruptcy court may not simply rubber-stamp the decision to enter into a settlement, it need not conduct an exhaustive investigation, hold a mini-trial on the merits of the claims, or require that the settlement be the best possible. In re Walsh Constr., Inc., 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, a bankruptcy court "need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable." In re Pac. Gas, 304 B.R. at 417 (citing In re A&C, 784 F.2d at 1381).

Means v. Farmer (In re Means), 2012 U.S. Dist. LEXIS 62456 (C.D. Cal. May 3, 2012).

Accordingly, the court will analyze the proposed settlement under the A&C Props. factors.

**Probability of success in litigation**

Debtor has presented evidence supporting its view that claims under the Policy have little or no expected value to the estate: the policy lapsed in 2009 due to the failure of the receiver to pay premiums, Debtor was unaware of any insurable defects in the building while Debtor owned it and the building sat vacant and without construction progress for a long time under the receiver. Debtor has concluded that, as Debtor never substantially completed the project, the "tail" never arose under the terms of the Policy. Debtor's analysis appears consistent with the terms of policy set forth above.

In return, Arch is releasing its administrative claim, which the Debtor has concluded is equally dubious because the policy term had lapsed pre-petition and the tail never came into operation. Debtor had full insurance from another carrier post-petition, so this policy did not benefit the estate.

In summary, Debtor's probability of success on recovering under the insurance policy is extremely low, while its probability of obtaining disallowance of Arch's administrative claim is quite high.

**Difficulties of collection** does not appear applicable in this case.

**Complexity of litigation:** Litigation over the insurance policy involves issues of fact, insurance law and insurance contract interpretation, which would be complex and potentially quite expensive. Litigation on the administrative claim involves questions of

fact, interpretation of the insurance contract, insurance law and bankruptcy law, also complex and potentially quite expensive to litigate. Either litigation would entail substantial costs and delay resolution of Debtor's Chapter 11 case.

**Interests of Creditors:** Debtor is giving up rights under the Policy, which it believes are without value and is receiving release of a large (admittedly dubious) administrative claim in return. Each side is essentially releasing a claim with a low expected value in exchange for the certainty of mutual releases, with the attendant savings in (potentially quite high) costs. In short, this settlement is in the best interests of creditors of the estate. It will give the Debtor the outcome it would have expected in litigation over the Policy, but without the expenditure of substantial costs.

Builders argues that its unsecured claim will be harmed from dilution by Arch's unsecured claim. While the papers are a bit confusing on the treatment of Arch's unsecured claim,[1] this analysis follows the terms of the Settlement Agreement itself, which expressly leaves the questions of the validity and amount of Arch's unsecured claim for another day. Accordingly, the Settlement Agreement does not dilute unsecured claims. Furthermore, at the hearing Builders' counsel argued that the estate will pay a few pennies on the dollar to unsecured creditors so the allowance or disallowance of unsecured claims is not a powerful motivation.

[1] The Settlement Agreement leaves open the issues of the amount and validity of Arch's unsecured claim, while the motion is slightly less straightforward on the subject and the opposition argues as though debtor is seeking allowance of Arch's unsecured claim.

Builders and SoCal's also argue that the Settlement Agreement was entered into in bad faith, but their claims of bad faith are not supported by any facts, other than that settlement is disadvantageous to them.

**Conclusion:** After analyzing the A & C Props. factors, the court concludes that Debtor has exercised reasonable business judgment in entering into the Settlement Agreement. The Debtor has established that the Settlement Agreement was entered into in good faith and is reasonable, fair and equitable and in the best interests of the estate.

**Does court approval of the proposed settlement agreement improperly violate the rights of Builder's subsidiary, SoCal?**

SoCal argues that the Settlement Agreement should not be approved because its provision that "[t]he Policy is hereby terminated and deemed null, void and of no force and effect, *ab initio,* and that Arch will have no liability whatsoever for any claims asserted thereunder" harms SoCal unjustly by releasing its $1 million potential claim against Arch. Here, SoCal's interest is not as a creditor, but as a holder of its own potential claim against Arch. Builders and SoCal's citations (use of a Ninth Circuit case on settlements but adding misleading emphasis to "all creditors" and a Second Circuit case on class action settlements) do not support its assertion that the estate must look after SoCal's individual interests in making a settlement. Debtor's duty is to pursue the best interests of the estate, not whatever interests individual creditors may independently have.

Some decisions outside of the Ninth Circuit have required courts to consider the rights of third parties in determining whether the settlement is "fair and equitable" for

Rule 9019 purposes. See, e.g., Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639 (3d Cir. 2006); Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 754 (5th Cir. 1995). The Ninth Circuit's test for fair and equitable does not include this consideration, but focuses only on the settlement's effect on the estate and its creditors, as set forth in the cases cited in the previous section of analysis. As the Settlement Agreement is in the best interests of the estate; any disadvantage to SoCal resulting from the settlement should not weigh in the court's decision to authorize Debtor to enter into it, absent a violation of SoCal's legal rights.

An initial reading of the Policy supports Debtor's view that the Policy is no longer in effect and of no value. The Policy provides that coverage ends on termination, which occurred prior to the petition date. The tail never came into effect because the conditions for the tail never occurred. While the Court is not definitely determining that the Policy is no longer in effect, it does seem clear that any claims under the Policy are highly tenuous at best. Even in a jurisdiction that weighed the effect of the settlement on third parties, in determining whether the Settlement Agreement was fair and equitable, it would be unreasonable to expect the estate to incur substantial costs and delay merely to preserve SoCal's tenuous claims. Neither SoCal nor Builders has offered to pay the costs of litigation and, if they did, it would only deal with the assertion of an administrative claim and the amount of the claim (whether administrative or not) since there are no other bankruptcy issues remaining (the Debtor no longer owns the property and has rejected the contract). This would not resolve the key issue of SoCal and Builders and that is whether the "tail" of the policy covers any construction defects that they may be asserting.

SoCal does not appear have any independent rights under the Policy. Section 14 of the Policy prohibits the transfer of Debtor's rights and duties under the Policy. SoCal cannot enforce the policy as a third party beneficiary, because it is not one:

> "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (Civ. Code, § 1559.) "The word 'expressly,' by judicial interpretation, has now come to mean merely the negative of 'incidentally.' " (Gilbert Financial Corp. v. Steelform Contracting Co. (1978) 82 Cal.App.3d 65, 70, 145 Cal. Rptr. 448.) A contract may not be enforced by those who are merely incidentally or remotely benefited by it. (Lucas v. Hamm (1961) 56 Cal.2d 583, 590, 15 Cal. Rptr. 821.) Although no specific manifestation of an intent to benefit the third person is required, it must clearly appear that the contracting parties intended to benefit the third party, or that one party so intended and the other party understood that intent. (Id. at p. 591.)

California Cancer Specialists Med. Group v. Health Net, 2006 Cal. App. Unpub. LEXIS 7557, 6-7 (Cal. App. 2d Dist. Aug. 28, 2006).

There is no evidence that the Debtor and Arch intended to benefit subsequent owners of the premises, particularly ones who obtained the property through foreclosure. However it is logical that the Debtor did have such an intent so that it would be protected from any claim for construction defects made by a subsequent owner. And, even if SoCal were a third party beneficiary of the policy, Civil Code §1559 makes it clear that the parties to the Policy - Debtor and Arch - have the legal ability to rescind the Policy and end any third party beneficiary's rights to enforce it.

Most fundamentally, Debtor has the legal right to enter into an agreement to rescind a contract if it concludes that doing so is in the best interests of its estate. Cal. Civ. Code § 1689(a) ("A contract may be rescinded if all the parties consent thereto.") The Civil Code also provides that "[a] contract is extinguished by its rescission." Id. §1688. At the hearing, Builders argued that the Court lacked the "raw judicial power" to declare the Policy void *ab initio*. But the Court is not making any declarations or orders regarding the legal status of the Policy; Debtor and Arch are agreeing to rescind the

Policy and the court is *only* entering an order approving the Settlement Agreement as meeting the standards of FRBP 9019 and accordingly authorizing the Debtor to enter into to it. Whatever effect the parties' rescission has under applicable law, it will have.

SoCal argues that cancellation of the policy would not protect Arch from their assertion of liability and the Court makes not determination of this or of whether a mutual rescission by the Debtor and Arch qualifies as a cancellation. If SoCal is correct and a release or cancellation will be ineffective under California law against liability that has already arisen under the Policy, then SoCal's rights will survive the Settlement Agreement. SoCal is free to litigate over its rights under the Policy in an appropriate forum. But that forum is not here, as Debtor certainly has no interest in Policy following the Settlement Agreement and arguably didn't have beforehand.

Motion granted.

###

DATED: August 9, 2012

United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): )_ **MEMORANDUM OF OPINION REGARDING DEBTOR'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 9019(a) TO APPROVE SETTLEMENT AGREEMENT WITH ARCH SPECIALITY INSURANCE COMPANY** ___________________
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) –** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)________________, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Cynthia Futter Email: cfutter@futterwells.com
Richard Grossman Email: rgat135@aol.com
Brian Frontino Email: bfrontino@stroock.com
Leib M. Lerner Email: leib.lerner@alston.com
Scott Noskin Email: snoskin@mirmanbubman.com
S. Margaux Ross: margaux.ross@usdoj.gov
Stephen Sanders Email: smsanders@swlawfirm.net
Craig Welin Email: cwelin@frandzel.com
Anne Wells Email: wellsanne@earthlink.net

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page